THE STATE EX REL. FRANK L. MACKEY v. BEN C. HYDE, Superintendent of Insurance.

Court en Banc, August 6, 1926.

1. **INSURANCE BROKER: Certificate: May as Shall.** The word "may" in the statute (Sec. 6317, R. S. 1919) declaring that "the Superintendent of Insurance may, upon the payment of a fee of ten dollars, issue to any person a certificate of authority to act as an insurance broker," etc., is not to be construed as shall. To construe the statute as vesting in the Superintendent of Insurance no sort of power except the power to take the fee and issue a license would be to construe the statute as a revenue measure and nothing more, the fee being merely an occupation tax.

2. **INSURANCE: Regulation: Police Power.** The insurance business, being affected with a public interest, is subject to control and regulation under the police power; and the Missouri statutes (Chap. 50, R. S. 1919) disclose a scheme of regulation not only comprehensive but embracing the minutest details, their general object being to make certain (a) that the insured secures the indemnity for which he contracts, (b) that the rates and charges shall be reasonable and non-discriminatory, and (c) to create an agency charged with the enforcement of the regulating provisions, that agency being the Insurance Department, whose officer is its Superintendent.

3. **INSURANCE BROKER: Right to License: Discretion of Superintendent: Constitutional Statute.** The statute (Sec. 6317, R. S. 1919) investing the Superintendent of Insurance with power to license insurance brokers is not mandatory in its terms, but permissive only, and carries with it the right in him to exercise discretion, not arbitrarily, but reasonably. But it is not unconstitutional on the theory that it vests in the Superintendent an unregulated discretion, although no rules regulating his conduct are prescribed.

4. **DISCRETION: Regulation: Difficulty: Police Power: Insurance Broker.** The validity of a grant of discretion depends largely upon the nature of the business or thing in which it is to be exercised. It is not necessary that the statute prescribe a rule of action where it deals with situations which require the vesting of some discretion in a public official, as for instance, where it is difficult or impracticable to lay down or define a comprehensive rule, or where the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety and general welfare, or where personal fitness is a factor to be taken into consideration; and the statute (Sec. 6317, R. S. 1919) vesting in the Superintendent of Insurance authority to issue to an insurance broker a license to do business falls within this class of discretion.
**Held,** by WALKER, J., concurring, that the statute is not an invalid delegation of legislative power; it vests in the Superintendent of Insurance power to issue to an applicant a certificate of authority to act as an insurance broker, and leaves to him only the exercise of a judgment and discretion in enforcing the power, but in enforcing the power no resort to legislative power is required.

5. **INSURANCE BROKER: License: Discretion of Superintendent: Good Faith of Applicant.** An insurance broker is neither an insurer, nor the appointed agent of an insurer, nor are his activities an open book, and the statutes designed to prevent him from defeating the general purpose of the insurance laws are in their nature police regulations; and to prevent him from defeating the non-discriminatory provisions of the rate statute, the statutes vest in the Superintendent of Insurance a discretion to issue or to withhold a certificate of authority to an applicant to act as an insurance broker, and to require that he do not use the license as a means of reducing the cost of insurance through commissions, or otherwise evade the rate statute and other insurance laws, and the good faith of the applicant in the very nature of things cannot be tested by definite and comprehensive rules, but must be tested by a variety of circumstances, including his personal antecedents, and therefore the statute is not unconstitutional as a delegation of legislative power, and neither does the Superintendent abuse his discretion in refusing a license to an applicant who declines to meet reasonable tests.

6. ——: ——: **Refusal to Answer Reasonable Tests.** The Superintendent of Insurance does not abuse his discretion in refusing to issue a certificate of authority to act as an insurance broker to an applicant who refuses to sign an application containing the questions: "Is the insurance business your principal business? What part of your time will you devote to the insurance business? What knowledge have you of the insurance business?" The questions call for information reasonably necessary to the exercise of the discretion, and a refusal to answer them is a sufficient reason for refusing the license.

Corpus Juris-Cyc. References: Constitutional Law, 12 C. J., Section 329, p. 845, n. 56, 57, 58; Section 336, p. 850, n. 41; Section 855, p. 1130, n. 31; Section 878, p. 1145, n. 6; Section 896, p. 1161, n. 82. Insurance, 32 C. J., Section 11, p. 981, n. 90; Section 12, p. 984, n. 32; Section 13, p. 984, n. 51; Section 15, p. 986, n. 99, 1 New; Section 34, p. 999, n. 64, 65; p. 1000, n. 80. May, 39 C. J., Section 4, p. 1393, n. 72. Statutes, 36 Cyc., p. 1160, n. 28.

Mandamus.

PEREMPTORY WRIT DENIED.

*Frank X. Hiemenz, James T. Blair* and *Edward W. Foristel* for relator.

(1)　Even had the Legislature expressly attempted to impose the conditions which the Insurance Commissioner attempted to impose upon relator, the statutory attempt to effect such imposition of such conditions would have been unconstitutional and void because of their discriminatory nature. Hauser v. North British Ins. Co., 206 N. Y. 455, 42 L. R. A. (N. S.) 1141.　(2)　The act in question does not expressly authorize the Superintendent of Insurance to impose the conditions he is now attempting to impose, but even if the Legislature had attempted expressly to authorize him to impose additional conditions and had then failed to provide a "definite rule or specified conditions to which all similarly situated might knowingly conform," such attempt would have been futile, because such unregulated discretion cannot be vested in officials by the Legislature. State ex rel. Markis v. Superior Ct., 193 Pac. 845, 12 A. L. R. 1428, and note 1436.　(a)　Courts sometimes differ as to whether particular language in a statute prescribed a sufficiently definite rule. There is little or no difference of opinion upon the proposition that the statute must prescribe an adequately definite rule or be held invalid.　(b) The Legislature has no power to vest in any person or officer unregulated power, at discretion, to apply a law to whom he will or refuse to apply it to whom he will. Merchants Exchange v. Knott, 212 Mo. 636; State ex inf. v. Carlisle, 235 Mo. 259; Yick Wo v. Hopkins, 118 U. S. 368; Sutherland v. Miller, 91 S. E. 993; King v. State, 87 Tenn. 304; Hays v. Poplar Bluff, 263 Mo. 534; Welch v. Maryland Cas. Co., 47 Okla. 293, L. R. A. 1915 E, 708. This is as applicable to conditions additional to those a particular statute prescribes as to conditions when the statute prescribes none, otherwise, the whole rule (and thereby the Constitution) would be easy of evasion. (3) The Legislature may "make a law to delegate the power to determine some facts or state of things upon which the law makes or intends to make its own action depend; but the Legislature cannot delegate the power to make laws. State v. Thompson, 160 Mo. 345; Boyd v. Bryant, 35 Ark. 69. (a) "The true distinction is between the delegation of power to make the law, which necessarily involves the discretion as to what it shall be, and conferring authority or discretion as to its execution to be exercised under and pursuant to the law," which the Legislature has made. "The first cannot be done. To the latter no valid objection can be made." Railroad v. Comrs., 1 Ohio St. 77; State ex rel. v. Bridge, 95 Wis. 390; Sheldon v. Hayne, 261 Ill. 225; Cooley in Const. Lim. (7 Ed.) p. 163; Dowling v.

Ins. Co., 92 Wis. 69; Nalley v. Ins. Co., 250 Mo. 459; 1 Sutherland on Statutory Const. (1904), sec. 88, p. 148. (b) The statute prescribes no rules and delegates no authority to make rules. Construed as respondent construes it, he may make such rules as he will. He claims authority to prescribed regulations for limiting the class the act marks out. This is the necessary result of his contention. So construed, the section, as a law, is "intolerable in any country where freedom prevails as being the essence of slavery itself." The power to classify for legislative purposes is the essence of legislative power. Sheldon v. Hayne, 261 Ill. 226. (4) The word "may" is construed to be mandatory in a case like this. State ex rel. Jones v. Loughlin, 73 Mo. 449; State ex rel. v. King, 136 Mo. 318; Steiner v. Franklin Co., 48 Mo. 178; State ex rel. Hawkins v. Harris, 304 Mo. 315. (5) Applying the canon that an act will be construed so as to be valid rather than invalid does not constitute a decision of a constitutional question. Relator does not attack Section 6317. Petring v. Current River Land Co., 111 Mo. App. 373.

*North Todd Gentry,* Attorney-General, and *James A. Potter,* Special Assistant Attorney-General, for respondent.

(1) Relator cannot question the constitutionality of Section 6317. For the purposes of this case the relator must accept the insurance broker's statute as it reads on its face. He is seeking the aid of a writ of mandamus to procure a broker's license under this statute, and must stand or fall by the plain letter of the statute, bécause in order to obtain mandamus he must have a clear legal right to the same. In other words, he must have a clear legal right under the statute as it reads. State v. Seebold, 192 Mo. 730; Cooley's Constitutional Limitations (7 Ed.) v. 232; Cunningham v. Railroad, 165 Mo. 270; State v. Hathaway, 106 Mo. 236; Jones v. Black, 48 Ala. 540; Shehane v. Bailey, 110 Ala. 308. If the insurance broker's statute is unconstitutional as it reads, the relator has neither a legal right to a broker's license nor is the respondent under any legal duty to issue such license. An unconstitutional law is the same as no law. State ex rel. v. McIntosh, 205 Mo. 607; State ex rel. v. Cook, 41 Mo. 593; Hart v. Folsom, 70 N. H. 213. Under the plain wording of the statute, relator has no clear legal right to a broker's license, and since he is not in a position to attack the constitutionality of the act he has no case. United States ex rel. Siegel v. Board of Liquidation of New Orleans, 74 Fed. 489; State ex rel. Winie v. Stoddard, 25 Nev. 459; Kellogg v. Currens, 111 Wis. 431. (2) Relator's theory of this case seems to be that the use of the word "may" in the insurance broker's statute vests in the insurance commissioner an unbridled discretion which amounts to a delegation of legislative and judicial

powers which are illegal. It is now generally held that discretionary powers may be lodged in administrative officers to determine whether the terms of a law have been complied with, "and that such terms, like other general terms, get precision from the sense and experience of men." Yee Bow v. Cleveland, 12 A. L. R. 1427; Mutual Film Corp. v. Industrial Comm., 236 U. S. 230, 59 L. Ed. 552; Hall v. Geiger-Jones Co., 242 U. S. 539, 61 L. Ed. 480; Gundling v. Chicago, 177 U. S. 183; Red Sea Oil Mfg. Co. v. Board of Agriculture, 222 U. S. 380; State ex rel. Lieberman v. VanDecarr, 199 U. S. 552. The statute under consideration must be taken as a whole and its intent, meaning and purpose must be gathered from the four corners of the statute, and it must be so construed, if possible, as to harmonize with all the other statutes relating to the subject of insurance. The Legislature never intended that anyone should have a broker's license except persons who either were, at the time of the application for same, bona-fide insurance brokers, or who intended to become such. If the Superintendent of Insurance must issue a broker's license to any person who applies for same and pays the statutory fee, then he can be compelled to grant an insurance broker's license to every large property owner in the city of St. Louis. A property owner armed with an insurance broker's license is entitled to a rebate upon his insurance in the form of a commission. This certainly was not the intent of the Legislature, because another section of our insurance law absolutely prohibits the paying of commissions to property owners under such circumstances as would enable them to secure insurance cheaper than the small property owners having property of the same class and rating. Adleman v. Board of Health, 84 Conn. 691; New York Mortgage Co. v. Secretary of State, 114 N. W. 82. (3) The grant of power to issue a license includes the power to refuse one, and mandamus will not lie until it is alleged and proved that the officer acted arbitrarily. 25 Cyc. 603; Downes v. McClellan, 210 Pac. 397; Noble v. English, 167 N. W. 629; People v. Grant, 126 N. Y. 473. (4) When a statute or ordinance simply says that an officer "may" issue a license or permit, mandamus will not lie unless there is a clear abuse of discretion. Doben v. Board of Health, 127 N. J. App. 38; McGinnis v. Atlantic City, 126 N. J. App. 663; State ex rel. Hawkins v. Harris, 263 S. W. 807. (5) Cases illustrating the discretionary power that may be lodged in an administrative officer without violating that provision of the Constitution forbidding the delegation of legislative powers are the following: State v. Public Service Comm., 162 Wash. 523; Commonwealth v. Sweeny, 61 Pa. Sup. 367; Merchants Exchange v. Knott, 212 Mo. 616; State v. Thompson, 160 Mo. 333; State ex rel. v. McIntosh, 205 Mo. 616; State v. Mathews, 44 Mo. 527. Section 6317 does not delegate to the insurance commissioner the power to determine whether the statute shall

become effective; it gives the insurance commissioner no power to determine the existence or non-existence of the law itself. The law was complete and became effective when it left the hands of the Legislature. The insurance commissioner has only the right to determine the existence or non-existence of certain facts, or to impose certain regulations and conditions necessary to determine certain facts, which facts in turn determine whether one comes within the provisions of Section 6317. This power to determine facts or to impose reasonable regulations by which such facts may be determined, is in no sense legislative or judicial power. St. Louis v. Lamp Mfg. Co., 139 Mo. 560; State v. Thompson, 160 Mo. 343; Merchant's Exchange v. Knott, 212 Mo. 644; State v. Mathews, 44 Mo. 527. (6) One who seeks the aid of mandamus to compel the performance of a duty to him must show a clear legal right to have such duty performed. This clear legal right involves a personal interest in the relator and one peculiar to him, and it is never sufficient for one who seeks to compel the performance of a duty to himself to show that he has the same interest in the performance of the duty as other citizens in the community. Boardman v. Marshalltown Gro. Co., 105 Iowa, 455; Reedy v. Fagle, 23 Kan. 354; Adkins v. Doolen, 23 Kan. 659; Pearsons v. Ranlett, 110 Mass. 126; In re Wellington, 26 Amer. Dec. 631; State ex rel. Clark v. Smith, 106 Mo. 661; Vanhorn v. State, 51 Neb. 232; People v. Parmenter, 158 N. Y. 385; People v. City of New York, 45 N. Y. Supp. 900; State v. Charleston Light Co., 68 S. C. 540; La Volle v. Soucy, 96 Ill. 467; Payne v. Staunton, 55 W. Va. 202.

RAGLAND, J.—This cause has been argued and submitted a second time. On the original hearing an opinion was prepared which contains a statement of facts adequate for an understanding of the legal questions involved. The statement follows:

"Relator has instituted in this court a mandamus proceeding to compel the Superintendent of Insurance to issue a license to him as an insurance broker. The authority thus sought is conferred by the following statute:

"'Whoever, for compensation, acts or aids in any manner in negotiating contracts of insurance or reinsurance, or placing risks or effecting insurance or reinsurance for any person other than himself, and not being the appointed agent or officer of the company in which such insurance or reinsurance is effected, shall be deemed an insurance broker, and no person shall act as such insurance broker save as provided in this section. The Superintendent of Insurance may, upon the payment of a fee of ten dollars, issue to any person a certificate of authority to act as an insurance broker to negotiate contracts of insurance or reinsurance, or place risks, or effecting insurance or reinsurance with any qualified insurance company or

its agents, and with the authorized agents in this State of any foreign insurance company duly admitted to do business in this State. Such certificate shall remain in force one year, unless revoked by the Superintendent of Insurance for cause. Any person who shall act as broker or agent in negotiating insurance or reinsurance, as above stated, without first having obtained a certificate of authority or broker's license for such purpose, shall be deemed guilty of a misdemeanor and on conviction thereof shall be fined not less than ten nor more than one hundred dollars for each offense to be recovered and applied in the manner prescribed in Section 6322, Revised Statutes of Missouri, 1919.' [Section 6317, R. S. 1919.]

"The relator's petition alleges that the requirements of the statute have been complied with by him in applying for the license, but notwithstanding such compliance, the respondent . . . 'omitting the relator's adjectives . . . has failed and refused to issue such license. Upon the filing of this petition the Attorney-General, representing the respondent, waived the issuance of an alternative writ and this court directed that the petition be taken as and for such writ, whereupon the Attorney-General filed his return therein which admits the formal allegations of the petition. In addition, it is pleaded in said return that it is a prerequisite to the issuance of such a license that an application for the same be filed with the Superintendent of Insurance in compliance with the form prepared, furnished and required by the State Insurance Department to be used by all applicants; that the relator failed and has refused to make such application in the required form, but has used an old and obsolete blank, which does not conform in material matters to that required. It is further alleged that the character of the insurance business is such that a compliance with the required form is necessary to enable the Superintendent of Insurance to select proper persons to pursue the vocation of brokers; that such failure will prevent the respondent, as such superintendent, from knowing whether the applicant is a proper person to become an insurance broker within the meaning and purpose of the statute above quoted; that answers required to be made to the questions propounded in the form of application embody no more than is reasonably necessary to authorize the relator to secure a license as an insurance broker and to enable the respondent to intelligently discharge his duty in the issuance of same as required by Sections 6317, 6278 and 6095, Revised Statutes 1919; that the relator, by his refusal to execute said application and file the same with the Insurance Department, was not entitled to have the authority conferred on him by the State to transact the business of an insurance broker; that under and by virtue of Section 6278, Revised Statutes 1919, it is provided that:

"'No company or other insurer or agents shall directly or indirectly, by any special rate, tariff, drawback, rebate, concession,

device or subterfuge, charge, demand, collect or receive from any person, persons or corporation any compensation and premium different from the rate or premium properly applicable to the property so rated, as indicated by its public rating record, and no company or other insurer shall discriminate unfairly between risks of essentially the same hazard and substantially the same degree of protection.'

"By way of *innuendo* and as stating argumentatively the construction placed by the respondent upon the statutes regulating the conduct of the business of insurance in this State and as definitory of his duty under such statutes and the reasons for requiring applicants for licenses as insurance brokers to comply with the required form of application, the return further alleges:

" 'That it was the common practice prior to January 1, 1925, for persons to procure an insurance broker's license for the purpose of placing insurance upon their own property and upon the property of other persons, firms or corporations by whom such brokers were employed and in which firms and corporations such brokers were financially interested, for the unlawful purpose of enabling those insured to indirectly secure rebates upon their property, in violation of the sections of the statutes cited and not for the purpose of negotiating contracts of insurance for other people as required by said Section 6317; that it was the further common practice on and prior to January 1, 1925, for persons to procure an insurance broker's license in order to place contracts of insurance with foreign companies who were not authorized to do business in this State in violation of said Section 6317, such persons not at the time having a license to place excess lines of insurance as provided by Section 6313 of the Revised Statutes of Missouri for 1919; that all of said practices resulted in great discriminations in rates of premium among the policyholders in this State applicable to the same kinds of property, as indicated by the public rating records of said insurance companies, and also in unfair discrimination in rates between risks of essentially the same hazard and substantially the same degree of protection, and enabled large property owners to secure unlawful rebates on their insurance at the expense of the small property owners who were compelled to absorb in their premiums such unlawful rebates; that such unlawful rebates also resulted in great losses to the small policyholders and brought about great confusion, dissatisfaction and other illegal practices among the insurance companies and their agents in the State of Missouri, to the great damage and detriment to the people of this State; that as a direct result of the conditions resulting from such unlawful practices the respondent was compelled to and did prepare the new blank form of application for license as an insurance broker.'

"This form, which is attached to the return as an exhibit, omitting formal superscriptions, is as follows:

" 'The undersigned hereby makes application for license as an Insurance Broker and in accord with said application makes the following sworn statements:

" '1.  Name ................................................

" '2.  Address ................................................
                        Street and number        City

" '3.  Is the Insurance Business your principal occupation? ......

" '4.  If not, what is your principal occupation? ................

" '5.  What part of your time do you devote to the insurance business? ................................................

" '6.  What knowledge have you of the Insurance Business? ......

" '7.  What Agency will your business be brokered through? ....

" '8.  Are you licensed by this Department as an Insurance Agent? ................................................

" '9.  If so, what company are you licensed for? ..............

" '10. Are you in the employ of any licensed agent? If so, whom? ................................................

" '11. Previous license expires ........................ 192...
                    " ' ................................
                                        " 'Applicant

" 'Subscribed and sworn to before me, a Notary Public, in the County of ....................., City of ................., State of ................. this ......... day of ................: 192...

" 'My Commission expires ......................... 192...
                    " ' ................................
                                        " 'Notary Public.'

" '[Here follows the indorsement of an officer of the local Association of Insurance Agents, or of two licensed agents where there is no local association; such indorsement certifying to the correctness of the facts as stated herein.]

" 'The above application approved ................... 192...

" 'Approval refused ................................... 192...
                    " ' ................................
                                " 'Name of local Association
                    " ' ................................
                                        " 'Local Agent

" 'By.............................
        " 'Name and title of officer signing same.
                    " ' ................................
                                        " 'Local Agent.'

"For further return the respondent denies the good faith of the relator in making the application for a license and states that this proceeding to compel the granting of a license is instituted and pros-

315 Mo.—44.

ecuted by persons, firms and corporations to secure unlawful rebates upon their own insurance in violation of Sections 6317, 6278 and 6095, Revised Statutes 1919.

"In addition the return alleges, in effect, that if this writ is made peremptory the regulatory provisions and salutary purposes of the statutes concerning the conduct of the insurance business in this State will be rendered nugatory and their enforcement prevented.

"The respondent, in defining his attitude in the discharge of his duty under the laws, as construed by him, further pleads:

" 'That he does not claim the arbitrary right and power to grant or refuse an insurance broker's license at his discretion, but only contends that he has the right to insist that all applicants for such license shall bring themselves within the provisions of the sections of the statute before referred to by a proper application duly verified by oath. Respondent does not contend that he has the right to determine the truth or falsity of the statements made in such applications provided they comply with said sections of the statute, but that such applicants should verify such statements under oath in order that they may be subjected to the criminal laws against false affidavits in the event such statements and answers are false.' "

Relator, segregating from Section 6317, Revised Statutes 1919, the sentence, "The Superintendent of Insurance may, upon the payment of a fee of ten dollars, issue to any person a certificate of authority to act as an insurance broker," says that in order for the statute to be constitutional "may" must be read as "shall." Upon this reconstruction he predicates his contention, namely: "The statute gives the insurance superintendent no sort of power in the premises except the power to take the fee and issue the license." If his position is sound, the statute is simply a revenue measure and nothing more, the fee required being merely an occupation tax. Such a conclusion, based as it is on an arbitrary construction of a single sentence culled from the statute, cannot be accepted.

The insurance business, being affected with a public interest, is subject to control and regulation under the police power; and this State has not been at all hesitant in the exercise of its power with reference to it. Our Insurance Code, Chapter 50, Revised Statutes 1919, discloses a scheme of regulation which is not only comprehensive, but which descends into the minutest details. Its general object is to make certain: that the citizen secures the indemnity for which he contracts, and that the rates and charges for insurance which may be required of him shall be reasonable and non-discriminatory. The agency of the State charged with the enforcement of its regulatory provisions is the Insurance Department, the chief officer of which is its superintendent. [Secs. 6082, 6083, R. S. 1919.]

All persons, whether individuals, associations or corporations, are prohibited from engaging in the insurance business in this State, unless and until they have received from the Superintendent of Insurance a certificate stating that they have complied with all the requirements of its insurance laws; even then they can undertake no business or risks except as specifically provided in those laws. [Secs. 6308, 6309, R. S. 1919.] And no person can act as agent or solicitor for an insurance company in procuring risks until there has been delivered to him a copy of the certificate showing his principal's authorization to do business. [Sec. 6308, R. S. 1919.] The affairs and management of every insurance company, including the doings of its officers, agents and attorneys, are subject to visitation; and consequently are under the continued scrutiny of the State. [Sec. 6095, R. S. 1919.] There is one individual engaged in effecting insurance, however, who is neither an insurer nor the appointed agent of an insurer, and whose activities are by no means an open book. This individual is the insurance broker, and unless he were somehow brought within the scheme of regulation it would not be complete. There can be no doubt but that the Legislature could have prohibited any person who was not an insurer, or the appointed agent of one, from intermeddling in any way in effecting insurance, if it had deemed such a prohibition necessary to accomplish the general purposes of the insurance laws of the State heretofore adverted to. Instead, however, it provided that within prescribed limits persons who were specially authorized by the State might aid in negotiating contracts of insurance, though they were neither insurers nor the agents of insurers. It seems clear that this provision is in its very nature a police regulation, and not a tax measure. This view is confirmed by the further provision of Section 6317 which impliedly authorizes the Superintendent of Insurance to revoke for cause a certificate of authority to act as an insurance broker.

As the language used in investing the Superintendent of Insurance with power to license insurance brokers is not mandatory in its terms, but permissive only, it carries with it the right to exercise discretion—not arbitrarily, but reasonably. [Samuels v. Couzens, 183 N. W. 925; 25 Cyc. 622, n. 21.] But relator says that if such language be given this its plain and obvious meaning, it renders the statute unconstitutional, in that it attempts to vest in the Superintendent an unregulated discretion. It is true that no rules of conduct are prescribed to govern the action of the Superintendent, but that fact does not necessarily render the statute invalid.

The validity of a grant of discretion depends largely upon the nature of the business or thing with respect to which it is to be exercised. For example, it is well established that in order for a statute or ordinance to be valid which places restrictions upon lawful conduct or

lawful business, in themselves harmless, it must specify the rules and conditions to be observed in such conduct or business, and must admit of the exercise of the privilege by all citizens alike who will comply with such rules and conditions. [Monticello v. Bates, 169 Ky. 258; Yick Wo v. Hopkins, 118 U. S. 356.] On the other hand, it is equally well settled that it is not necessary that statutes or ordinances prescribe a rule of action where they deal with situations which require the vesting of some discretion in public officials, as for instance, where it is difficult or impracticable to lay down a definite, comprehensive rule; or where the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety and general welfare; or where personal fitness is a factor to be taken into consideration. [State ex rel. Makris v. Superior Court, 12 A. L. R. 1428, and cases cited in Note III, a and b, page 1447 et seq.] We are of the opinion that the statute in question falls within the latter class. As already pointed out it is a part and parcel of the general scheme of insurance regulation and contributes in an essential way to the securing of its objectives. If brokers' licenses may be made use of to defeat the non-discriminatory provisions of the rate statute, as stands admitted on the pleadings, then in order that those provisions may not become a dead letter it is necessary that some discretion be exercised in the issuance of such licenses. The bona fides of an applicant in the very nature of things cannot be tested by a definite and comprehensive rule. But whether he intends in good faith to engage in the activities of an insurance broker as defined by the statute, or whether he purposes to use the license as such as the means of reducing the cost of insurance through commissions, for himself or an employer, or otherwise evading the insurance laws of the State, must be judged by a variety of circumstances including the personal antecedents of the applicant.

In the instant case relator declined to answer the following questions contained in the form prepared by the Insurance Department for applications for license as insurance broker: "Is the insurance business your principal business? What part of your time will you devote to the insurance business? What knowledge have you of the insurance business?" These questions called for information reasonably necessary to the exercise of the discretion vested by the statute in the Superintendent of the Insurance Department. The failure of relator to comply with the regulations of the department calling for such information was therefore a sufficient reason for refusing him a license.

Whether respondent can refuse to issue a license as insurance broker on the ground that the applicant is not actually engaged in the insurance business, or that he does not devote the greater portion of

his time to that business, or that he has no actual knowledge of the business, we need not determine, because not before us.

It follows from the views herein expressed that the peremptory writ should be denied and the proceeding dismissed. It is so ordered. *Blair, C. J., Walker, White* and *Atwood, JJ.,* concur, *Walker, J.,* in separate opinion; *Graves, J.,* absent; *Otto, J.,* not sitting.

WALKER, J., (concurring).—I concur in all that my learned brother has said in the denial of the peremptory writ herein, but have not deemed it inappropriate to add my views thereto.

I. To sustain the application for a peremptory writ it is contended that Section 6317, Revised Statutes 1919, is burdened with a delegation of legislative power and is hence invalid. To render the section subject to this criticism it must appear that it is not complete in all of its terms and provisions, and that its operative effect is delegated to some one, usually a public official, charged by its terms with its enforcement. This section, under a discriminating analysis, having, as its terms clearly indicate, a well-defined purpose to regulate the selection, under the law, of those authorized to solicit insurance, defines, in general terms, those to whom such licenses may be issued, but leaves the details necessary to the effective discharge of this duty to the respondent. This summary of its context discloses no omission, either in its terms of provisions which will justify the conclusion, even by implication, that a resort to delegated power must be had to enforce its requirements. The section, therefore, may be characterized as manifesting the exercise of the judgment and discretion of the Legislature in its enactment and the reposing of trust and confidence in the Superintendent of Insurance to enforce it; and under no reasonable construction can it be said to embody a delegation of legislative power. To so hold it must appear from its face that the power delegated is purely legislative. [State ex rel. v. Pub. Serv. Comm., 162 Pac. 523.] Another requisite for the determination of the existence of this power is that it must appear to whom the same has been delegated (Commonwealth v. Sweeney, 61 Pa. Sup. 367); and it must be clear that without the exercise of the power by the person to whom it has been delegated the statute will be incomplete and incapable of enforcement. Although the Legislature in enacting this statute did not prescribe the conditions under which licenses to insurance brokers may be issued, it clearly invested the Superintendent of Insurance with power to grant licenses. As a necessary consequence of this investiture there follows the right and duty to prescribe the conditions under which the privileges sought may be conferred.

A large measure of discretionary power is vested in officers and boards charged with the administration of statutes enacted to promote the general welfare. This discretion has been exercised in this jurisdiction by empowering the former Board of Railway and Warehouse Commissioners to fix fees for the inspection and weighing of grain (Mer. Exchange v. Knott, 212 Mo. 616); and to authorize the State Auditor to prescribe the conditions under which pool sellers on race tracks might ply their vocation (State v. Thompson, 160 Mo. 333).

In State ex rel. Crandall v. McIntosh, 205 Mo. 589, and in the kindred case of State ex rel. Brown v. McIntosh, 205 Mo. 616, the question arose and was determined as to the right of one to practice the vocation of dentistry free from the regulation of a state board. In each of these cases it was held, in harmony with the trend of authority, that no one had a vested right to practice that vocation; that a license so to do when granted possessed no rights of property and had none of the elements of a contract; that it was a mere naked privilege, usable at the option of the licensee. Like reasoning, with equal force, may be applied to an application for a license by an insurance broker.

As we said in State v. Mathews, 44 Mo. l. c. 527: "In the organization of the Insurance Department, it was necessary, in order to carry out the act, to empower the Superintendent to do certain things; but the power would have been fruitless without authority to enforce it." With the power to enforce, the correlative power must exist to prescribe the conditions of enforcement, which of course must be reasonable in that they will not operate to interfere with the uninterrupted transaction of the calling licensed.

In State v. Stone, 118 Mo. l. c. 403, we declared that: "To allow the defendant to carry on the business of an insurance agent under the circumstances as developed in this case, without complying with the law in regard to insurance, would be simply licensing him and those whom he represents to evade the law, while companies and corporations engaged in the same business have complied therewith. If he and those whom he represents desire to engage in such business, they should comply with the law, and while deriving benefits from such business, bear the burdens imposed upon it by statute."

A compliance, therefore, with the law in applying for a license does not mean a mere formal application for this privilege, but one in accordance with the requirements prescribed by the superintendent. Additional instances might be cited in this and other jurisdictions illustrative of the right of public officials to prescribe the conditions under which different vocations may be pursued. Enough has been said, however, to establish the existence of that right.

II.   There is nothing in the letter of Section 6317, supra, nor is there a reason deducible from its construction, when we take into consideration the purpose of its enactment, to authorize the word "may" therein to be construed as "shall." Such a construction would destroy the purpose of the section in that it would nullify the power of the Superintendent to regulate the granting of licenses.

The Superintendent is invested with the discretion denied by the relator and the alternative writ herein should not have been granted. It is therefore quashed and the proceeding dismissed.