243 S.W.2d 549 (1951)
BEHNKE
v.
CITY OF MOBERLY.
No. 21643.
Kansas City Court of Appeals, Missouri.
November 5, 1951.
*550 Marion E. Lamb, Moberly, for appellant.
Hunter, Chamier & Motley, Moberly, for respondent.
DEW, Justice.
In this action the plaintiff (respondent) sued to recover damages to his airplane, alleged to have been caused by the defendant's negligence in failing to warn of a soft and muddy trench contiguous to the newly constructed concrete parking apron on defendant's airport, which trench was concealed by snow and into which plaintiff ran his airplane in attempting to park it. The verdict was for plaintiff for $300, and defendant has appealed from the judgment thereon.
The substance of plaintiff's petition is that defendant owned and operated the airport in question; that it had leased a hangar and certain buildings on the premises to one B. L. Laursen, reserving exclusive control of the remainder of the property; that defendant, during September and October, 1948, had constructed a concrete ramp or parking apron adjoining on the south the black top taxi strip in front of and south of the hangar; that on completion of such construction, defendant left a deep mud-filled trench immediately south of and alongside the edge of the newly constructed parking apron; that on December 25, 1948, plaintiff landed his plane on defendant's airport, accompanied by his wife and two children, and taxied it to the hangar, where his gasoline supply was replenished; that thereafter, when plaintiff taxied his plane toward a mooring position on the parking apron provided by the defendant, and while in the exercise of due care on his part, the nose of his plane dropped into the mud-filled trench, damaging his plane in the particulars described; that the airport was covered with snow, drifted so as to make the ground in that part appear level; that the plaintiff had no reason to anticipate the existence of the trench and was required to proceed beyond it in order properly to moor his plane; that defendant carelessly and negligently dug and left open the partially mud-filled trench with no guards or other warning signs of its existence; that such dangerous condition was known to defendant in adequate time prior to the date of the accident for the defendant, in the exercise of ordinary care, to have filled the trench with solid material or to have provided warning of its existence.
The answer denied the acts of negligence alleged, pleaded contributory negligence and, further, that the operation of the airport by the city was a governmental function *551 out of which no cause of action for damages against the city can arise; that the extent of the parking area was a feature inherent in the plans adopted for its construction, not due to defendant's negligence in construction or maintenance, from which no liability can arise against defendant for plaintiff's failure to operate his plane thereon, and no duty existed on the part of defendant to erect signs or warnings to prevent plaintiff from straying off of the paved area; that if the portion along the edge of the concrete area was soft and muddy it was due to rain, snow and forces of nature over which defendant had no control; that plaintiff's use of the area was for his own pleasure and convenience, and he was a mere licensee.
Plaintiff's evidence tended to show that from the three paved runways of the airport there was a taxi strip 80 feet wide, paved with black top, leading to the hangar and offices at the east side of the property, near which are located gasoline pumps. On October 8, 1948, defendant leased the buildings to one B. L. Laursen, for the purpose of carrying on an aviation school, repairing, servicing and storing airplanes; that the lease required lessee to keep on hand and sell gasoline and oil. As rental the lessee was required to pay to defendant one cent a square foot of floor space rented; two cents for each gallon of aviation fuel sold on the premises, $1.20 out of each $1,000 of the gross receipts from lessee's operations (excluding fuel sales and repairs from hauling freight or passengers to or from the airport), plus city tax on cigarettes sold. Lessee was required to perform the duties of airport manager until supplanted by one named by the city. The lease was in effect on the date of the accident complained of. During the term of the lease the airport was open in the day time for the use of aircraft and no one had been known to be refused its facilities. Six or seven hundred planes arrived and left the airport in the course of a normal year.
The plaintiff testified that over a period of a year or more prior to the accident he had used the airport some ten times or more, and had parked his plane on the grass at the rear of the gasoline pumps or on the grass across the runway south of the hangar, where eye bolts and ropes were provided for mooring airplanes, and that he had purchased gasoline at the airport and used its facilities on those occasions. There was testimony that between October 18 and November 18, 1948, defendant constructed a concrete slab over this parking area, south of the hangar, 40 feet wide and 376 feet long, which was joined to the black top runway in front and south of the hangar and other buildings. The excavation for the concrete parking apron extended south beyond the concrete slab from four inches to two feet, to provide for the forms used in laying the concrete. The forms were later removed, leaving a trench along the south edge of the concrete from eight inches to two feet in depth. This trench was then filled with dirt.
There was evidence on the defendant's behalf that the trench was properly filled with dirt, and that it was packed down by use of the front wheel of a motor grader exerting pressure of 3,500 pounds. Evidence of some of the plaintiff's witnesses tended to dispute this. Plaintiff's witnesses testified that ten days before the accident it had rained for three hours; that the dirt in the trench had settled two or three inches below the concrete; that tail wheels of airplanes had purposely been sunk in the mudfilled trench to anchor the planes, and the holes made thereby had not been refilled; that it snowed on December 18th and 23rd, and that on December 25th there were three or four inches of snow over the airport, and drifted in certain places. On account of the snow there was nothing to indicate where the concrete ended and the mud-filled trench was situated, the trench being entirely concealed.
The plaintiff testified that on December 25th he and his wife and two small children landed at the airport; that they had gone to Moberly to visit his wife's relatives. He taxied his plane to the gasoline pumps near the hangar and purchased gasoline to fill his tank. He was not aware that the parking area had been paved and it was now completely covered with snow. On this occasion there being no help or facilities *552 for pushing or pulling the plane into mooring position, and being unable to back his airplane by motor power, he shoveled the snow from the rear of the wheels and by hand backed his plane far enough from the pumps to proceed forward by the power of his motor. He then walked to the usual place of parking, south of the runway, to locate the tie ropes and to test the ground. He found the surface level, covered with snow and "pretty hard." Unable to see the eye bolts and ropes because of the snow, he summoned an employee from the hangar who helped him locate a set of tie ropes. He then returned to the plane, applied his power and taxied the plane toward the tie ropes. It was later disclosed that the eye bolt for the tail rope was four feet north of the south edge of the new concrete apron and the bolts for the forward portion of the plane were twenty-three feet north of the south edge of the concrete. In order to put his plane in position to moor it, it was necessary to run his plane south of the eye bolt for the tail attachment, turn it around facing north, and to proceed forward in a position to attach the three ropes. He could not have turned around in the runway in front of the hangar and then backed into the desired position, since he could not back his type of plane except by hand, which, on account of the snow and lack of help, he could not do over such a large area. As he proceeded five to seven feet south of the edge of the concrete, he was in the act of turning his front wheel to the right and to the north to enter the parking position, when the front wheel sank its full height of about ten inches into the soft mud of the trench at the south edge of the concrete, causing the tail of the plane to rise and the propeller to strike the ground, breaking the propeller blades and causing other damages shown.
Defendant first contends that no negligence was proved; that the evidence showed defendant backfilled the trench in the usual and customary manner and used the ordinary care of a prudent person in so doing. The negligence submitted by the plaintiff was not the location of the trench or its muddy contents, but the failure on defendant's part to place any signs, markers or other warnings of its existence and location, under the circumstances shown. This was an element of fact for the jury's determination under the evidence and instructions of the court, and this court cannot determine it as a matter of law.
Defendant contends that it was not negligence for defendant to fail to take precautionary measures to prevent an injury which could not have been reasonably anticipated and would not have happened except under unusual circumstances. The term "negligence" was properly defined for the jury in this case in a separate instruction, and the jury was required in plaintiff's main Instruction 3 to apply that definition in any finding in plaintiff's favor. The facts involved under this point were matters for the jury's determination.
Next the defendant asserts that there was no duty imposed upon it to warn plaintiff of the conditions complained of because he was a mere licensee and was at the airport for his own convenience and pleasure; that defendant's only duty was to refrain from any willful or wanton injury to his property; that even if plaintiff were an invitee, the conditions were as well known to him as to the defendant and he cannot recover for the consequences; that when plaintiff drove his plane off of the concrete he was a mere licensee and in a place where he should not be. This point involves the defendant's fifth point, which is that the ownership and operation of an airport by a city is a governmental function in which the city cannot be held liable for tort. We shall consider the third and fifth points together. "The general rule that the owner of premises owes to a mere licensee no duty as to the condition of the premises, except that he must not wantonly or willfully cause him harm, applies where such owner is a municipal corporation. * * * The rule that the owner of premises, who induces others to come on them by invitation, express or implied, owes them the duty of exercising ordinary care to keep the premises in a reasonably safe condition applies to premises owned by a *553 municipal corporation in its private corporate capacity." 63 C.J.S., Municipal Corporations, § 898, p. 303.
It is admitted in the present case that the defendant owned and operated the airport. If so, it was under authority of Chapter 305, RSMo.1949. Section 305.210 provides that such operation and maintenance shall be a municipal charge, and that it may make regulations and fix the fees for the use of the airport or landing field. The Supreme Court en banc in Dysart v. City of St. Louis, 321 Mo. 514, 11 S.W.2d 1045, 1049, quoted with approval as follows: "`An airport with its beacons, landing fields, runways, and hangars is analogous to a harbor with its lights, wharves and docks; the one is the landing place and haven of ships that navigate the water, the other of those that navigate the air. With respect to the public use which each subserves they are essentially of the same character. If the ownerhip and maintenance of one falls within the scope of municipal government, it would seem that the other must necessarily do so. We accordingly hold that the acquisition and control of an airport is a city purpose within the purview of general constitutional law.'"
It was also stated in Annotation, 138 A.L.R. 126: "The weight of authority supports the view that in the absence of a statute indicating an intention to exempt municipalities from liability in such cases, the maintenance or operation of an airport by a municipal corporation is the exercise of a proprietary function, and that the municipality may be liable for torts in connection therewith." See, also, Annotation, 83 A.L.R. 333, 351. Under the record before us and in the absence of statute to the contrary, we conclude that the ownership and maintenance of the airport by the City of Moberly was a municipal or proprietary function and not a governmental one.
The question which next presents itself is: was the plaintiff a mere licensee or was he an invitee? It was said in Connole v. Floyd Plant Food Co., Mo.App., 96 S.W.2d 655, 657: "The distinction between one who is merely a licensee and one who is an invitee turns largely upon the nature of the business that brings him there. An invitee to a place of business is one who goes there either at the express or implied invitation of the owner or occupant on business of mutual interest to them both, or in connection with the business of the owner or occupant which is there being carried on; while a licensee is one who goes upon the property of another, either by express invitation or with his implied acquiescence, not on any business of the owner or occupant, but solely in pursuit * * * of the licensee's own business, pleasure, or convenience." Gilliland v. Bondurant, 332 Mo. 881, 59 S.W.2d 679.
In this connection it was said in Happy v. Walz, 358 Mo. 56, 213 S.W.2d 410, 414: "An implied invitation is `one which is held to be extended by reason of the owner or occupant doing something or permitting something to be done which fairly indicates to the person entering that his entry and use of the property is consistent with the intentions and purposes of the owner or occupant, and leads him to believe that the use is in accordance with the design for which the place is adapted and allowed to be used in mutuality of interest.'"
The record before us contains evidence that defendant had for a long period held the airport open for use by operators of aircraft. It provided landing facilities, runways, hangars, gasoline and oil supplies, and mooring equipment; that hundreds of airplanes used the airport each year; that it had allowed plaintiff at least ten times within the year to use its premises; that plaintiff had purchased fuel and had repairs made at the airport on previous occasions; that no person had ever been known to be refused landing privileges; that defendant received two cents for each gallon of fuel sold at the hangar, and a part of the gross receipts from the operation of the hangar, school and repair services on the premises; that on the instant occasion it received a tax on the gasoline purchased by the plaintiff; that one of the lessee's employees helped plaintiff to find the tie ropes to park his plane. This evidence we deem sufficient to submit the issue whether defendant impliedly invited "operators of *554 aircraft", including the plaintiff, to use the airport.
The duty to an invitee is to exercise reasonable and ordinary care for his safety consistent with the circumstances existing and there may be a breach of such duty without any element of wantonness. 65 C.J.S., Negligence, § 45, pages 521, 524. This rule applies whether the invitation be express or implied. Gilliland v. Bondurant, supra. The defendant makes the point that it was not its duty to warn the plaintiff of conditions outside the paved portion of the parking area. The muddy trench was shown to be contiguous to the edge of the parking slab and there was evidence that it would create a dangerous defect incident to the reasonably careful use of the area under the conditions prevailing at the time. We believe this point not well taken.
It is next urged that even though there were a duty on defendant's part to warn the plaintiff of the condition of the soil adjacent to the concrete apron, that plaintiff was guilty of contributory negligence, as a matter of law. It is urged that since the plaintiff investigated for himself the surface at the airport, he failed to exercise ordinary care for his own safety, since he must be held to have discovered any dangerous conditions existing and which would be revealed upon proper investigation. The evidence in this respect need not be here restated, but upon its analysis it is clear that this court cannot declare, as a matter of law, that the evidence showed the plaintiff guilty of contributory negligence.
Lastly, the defendant complains of the plaintiff's Instruction P-3. Particularizing, the defendant asserts (1) that the instruction omitted the defense that plaintiff was a licensee; (2) that it allowed the jury to find the soft dirt area was dangerous to aircraft using the concrete parking area, when plaintiff was not attempting to use the concrete apron; (3) that it omitted the defense that defendant was not required to guard against obvious defects. The instruction required a finding that defendant invited "operators of aircraft" to use its airport facilities; that the soft dirt area was dangerous to aircraft using the concrete apron, and that the nose wheel of plaintiff's plane went into the soft area "while plaintiff was taxiing the plane on the concrete parking area", and it required the jury to find that the airport was covered with snow. We find the instruction not defective in any of the respects charged. Judgment affirmed.
All concur.