Donald **CLAY** and Richard Dollus,
Plaintiffs-Respondents,

v.

The **CITY OF ST. LOUIS**, a municipal corporation, et al., Defendants-Appellants.

No. 34536.

Missouri Court of Appeals,
St. Louis District,
Division Two.

May 15, 1973.

Robert C. McNicholas, City Counselor, John J. Morton, Asst. City Counselor, James J. Gallagher, Associate City Counselor, St. Louis, for defendants-appellants.

Robert H. Burns, St. Louis for plaintiffs-respondents.

SIMEONE, Judge.

This is an action by the plaintiffs-respondents (hereinafter plaintiffs) who are taxpayers, residents of the City of St. Louis and users of the facilities at Lambert International Airport against the defendants-appellants (hereinafter defendants), City of St. Louis, Airport Commission of the City of St. Louis, individual members of that Commission and certain officials of the City.

Plaintiffs brought suit for declaratory judgment and injunction to test the validity of the ordinance establishing the City of St. Louis Airport Commission (now Airport Authority) and delegating certain authority to that Commission. The action further sought to test the validity of certain regulations adopted by the Airport Commission which regulated flights of "solo student" pilots at Lambert Field and established landing fees for general aviation aircraft.

At the time the action was filed, December 4, 1967, the Airport Commission operated under authority of Ordinance No. 47223 as amended by Ordinance No. 54003, all of which were codified in the City Code under various sections in Chapter 70, Revised Code of the City of St. Louis. While the action was pending the ordinances above mentioned and the City Code were amended by Ordinance No. 54999, approved March 16, 1968. The amendments do not affect the rulings of either the trial court or this court.

All of the facts necessary for a determination of the issues in this case were stipulated by the parties, as set forth in the agreed statement of facts, and submitted to the trial court by agreement. While

other issues were raised by plaintiffs in their pleadings, the trial court, in its decree, ruled only on the issues of the "landing fees" and the prohibition of "solo student" flights.

On June 30, 1967, the Airport Commission issued an order prohibiting all student solo flying activities within the confines of Lambert-St. Louis Municipal Airport as follows:

"Pursuant to the order and direction of the Airport Commission of the City of St. Louis under date of June 20, 1967 all student solo flying activities, including but not limited to the runways, taxiways and aprons, be and are hereby prohibited within the confines of Lambert-St. Louis Municipal Airport in St. Louis County, Missouri, beginning September 1, 1967. This prohibition includes all landings, takeoffs and taxiing of airplanes used by students for solo flying activities."

Then on August 22, 1967, the Commission adopted a schedule of landing fees, effective September 1, 1967, for general aviation aircraft using Lambert. The fee regulation established a schedule of landing fees applicable to various categories of aircraft. The Commission based its authority to set the landing fees on Section 4 of Ordinance No. 47223:

"Section 4. The Commission shall have power to establish and shall establish schedules fixing all fees and charges, other than those contained in contracts, leases, and agreements entered into under Section Three, for use of the airport, landing field, hangars, and space in buildings located in and on the airport and to modify the same from time to time." (Section 7 of Ordinance No. 54999.)

The only change in that section now appears to be in Section 7 of Ordinance No. 54999, approved March 19, 1968, which changes the authority to establish fees from the Airport Commission to the Director of Airports, with approval of the Commission.

The Commission based its authority to prohibit solo student flying on Section 2 of Ordinance No. 47223:

"Section 2. The City of St. Louis Airport Commission shall be responsible for the planning, management and operation of all city airports and all airport property, installations, and auxiliary facilities, including any lands or properties heretofore or hereafter owned and acquired by the City for airport purposes.' (Section 5 of Ordinance No. 54999.)

The issue presented on this appeal is whether the ordinances authorizing the Airport Commission to set fees and establish regulations for student solo flying constitute an unlawful delegation of legislative authority.

The defendants urge that the delegation to the Airport Commission under the authority of the ordinance was made pursuant to the authority granted to a charter city by Mo.Const. Art. VI, § 19, and was not prohibited or rendered void by § 305.-210, RSMo 1969.[1] On the other hand plaintiffs maintain that § 305.210 requires legislative functions to be exercised by the Board of Aldermen and the attempted delegation of authority to the Airport Commission is void for failure to provide any criteria or standard to guide the Commission in the establishment of a scale of landing fees or in prohibiting student solo flying.

Defendants contend the trial court erred because it mistakenly assumed that the Airport Commission was created and acted under enabling authority set forth in Chapter 305. Defendants contend that the Commission was authorized under ordinances which were adopted under authority of its charter as authorized by the

---

1. All references are to RSMo 1969, V.A.M.S., unless otherwise indicated.

Constitution, and that hence the City can delegate the power to establish fees. The defendants also contend that even if the Commission was established under the authority of § 305.210 the language of that statute permits the City to delegate the power to establish fees. § 305.210 provides that the local legislative body of a city " . . . may adopt regulations and establish fees for charges for the use of such airport or landing field."

But whether the Commission or Authority derives its powers from the Charter or § 305.210, there must be a proper delegation of power which contains specific standards and guides in the ordinance, or fall within one of the recognized exceptions thereto.

The trial court found the provisions of Ordinance No. 47223 delegating to the Commission the power to establish fees and to prohibit student solo flying to be an unlawful delegation of the legislative function and held the fixing of fees and the prohibition of solo flying to be null and void. We agree with the trial court as far as the establishment of landing fees, but find that the regulation prohibiting "student solo" flights is a lawful delegation of authority to the Airport Commission.

The management of an airport by a city has been described as a municipal function,[2] a city purpose,[3] and a proprietary function,[4] but not a governmental one.[5] In Dysart v. City of St. Louis, 321 Mo. 514, 11 S.W.2d 1045, 1049, the court upheld the right of the City of St. Louis to establish, own and operate an airport under its charter provisions. McDonnell Aircraft Corp. v. City of Berkeley, 367 S.W.2d 498, 509 (Mo.1963). The authority of the City to maintain an airport was expressed in American Airlines, Inc. v. City of St. Louis, 368 S.W.2d 161, 164 (Mo.1963):

"The City of St. Louis was by statute and charter lawfully authorized or empowered to acquire, establish, construct, own, control, lease, equip, operate, and regulate airports or landing fields for the use of airplanes and other aircraft 'either within or without' the city limits as a public purpose and as a municipal charge and a municipal or city purpose . . . And the legislative body of the City was authorized to adopt regulations and establish fees or charges for the use of the airport or landing field. Sections 305.170, 305.190, and 305.210; Art. I, Secs. 8 and 9, Charter, City of St. Louis; . . ."

A legislative body such as the Board of Aldermen generally cannot delegate its authority, but alone must exercise its legislative functions. Automobile Club of Mo. v. City of St. Louis, 334 S.W.2d 355 (Mo.1960); State ex rel. Priest v. Gunn, 326 S.W.2d 314, 320, 321 (Mo. banc 1959). And an ordinance which vests discretion in administrative officials must generally include standards for their guidance in order to be constitutional. Behnke v. City of Moberly, 243 S.W.2d 549 (Mo. App.1951). The modern tendency, however, is toward greater liberality in permitting grants of discretion. Milgram Food Stores, Inc. v. Ketchum, 384 S.W.2d 510, 514 (Mo. 1964), cert. den. in 382 U.S. 801, 86 S.Ct. 10, 15 L.Ed.2d 55; Davis, Administrative Law 39 (1972). The validity of any grant of discretion will depend largely upon the nature of the activity with respect to which it is exercised. In order for an ordinance which places restrictions upon lawful conduct to be valid, specific rules and conditions must be set forth in order that all who exercise the privilege are treated alike.

The Missouri decisions recognize three exceptions to the general rule which

2. Mo.Const. Art. VI, § 19.

3. § 305.130, RSMo 1969.

4. Ordinance Nos. 47223, 54003, 54999, City of St. Louis.

5. McQuillin, The Law of Municipal Corporations § 53.96 (1963).

requires the inclusion of standards in an ordinance when a delegation is made to an administrative body: (1) where the ordinance deals with situations which require the vesting of some discretion in public officials, for instance, where it is difficult or impracticable to lay down a definite, comprehensive rule; (2) where the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety and general welfare; or (3) where personal fitness is a factor to be taken into consideration. Milgram Food Stores, Inc., *supra* at 514; State ex rel. Priest, *supra*, 326 S.W.2d at 321; Ex parte Williams, 345 Mo. 1121, 139 S.W.2d 485, 490, cert. den., sub nom. Williams v. Golden, 311 U.S. 675, 61 S.Ct. 42, 85 L.Ed. 434 (1940); State ex rel. Mackey v. Hyde, 315 Mo. 681, 286 S.W. 363, 366 (banc 1926).

In State ex rel. Mackey, *supra*, 286 S.W. at 366, the court said:

"On the other hand, it is equally well settled that it is not necessary that statutes or ordinances prescribe a rule of action where they deal with situations which require the vesting of some discretion in public officials, as, for instance, where it is difficult or impracticable to lay down a definite, comprehensive rule; or where the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, *safety*, and general welfare; . . ." (Emphasis added.)

Although the modern tendency is toward greater liberality in grants of discretion, the regulation relating to the fee schedule in this case gave far more discretion than any of the other ordinances discussed in the cases cited by the parties. The fee schedule does not fall within any of the exceptions above. Nowhere in the current Ordinance No. 54999, nor in the former Ordinances, Nos. 47223 and 54003, are there any standards to guide the Airport Commission or the Director of Airports in fixing landing fees. In Automobile Club of Mo., *supra*, 334 S.W.2d at 359, a case involving the establishment of parking meter fees, the Supreme Court held that the establishment of the fee did not fall "within either the spirit or letter of those exceptions." See also Merchants' Exchange of St. Louis v. Knott, 212 Mo. 616, 111 S.W. 565 (1908).

■ § 305.210 specifies that the ". . . local legislative body of a city, . . . may adopt regulations and establish fees for charges for the use of such airport or landing field." We believe this section to be permissive. § 305.210 does not evidence the requisite intent of the general assembly to make it a mandatory provision. The local legislative body may establish a comprehensive schedule of fees for the use of the airport or it may, if it is impracticable to lay down a definite, comprehensive schedule, define certain ranges within which certain fees may be imposed and empower the Commission to ascertain the facts as to whether the users affected come within the designated ranges, according to standards and criteria included in the ordinance. Cf. Automobile Club of Mo., *supra*, 334 S.W.2d at 358.

■ Since Ordinance No. 47223 did not contain any standards to guide the Commission in the exercise of its discretion, and since the delegation of power does not fall within one of the recognized exceptions and under the authority of the decisions of our Supreme Court, the ordinance delegating power to fix fees and the order establishing the fee schedule are null and void as the trial court held. Section 4 of Ordinance No. 47223 does not set forth the necessary standards for the administrative body to follow and is, therefore, an improper delegation of legislative power.

■ We turn to the order prohibiting student solo flying. We deal only with the question of whether the City, through the Board of Aldermen, may delegate whatever power it possesses to the Commission to prohibit student solo flying.

The order of the Commission prohibiting student solo flying under the authority of Section 2 of Ordinance No. 47223 was declared to be null and void by the trial court. But this order stands on a totally different footing than the one establishing fees.

The "management and operation" of an airport is a matter which is the proper subject of numerous police regulations and falls within the second exception discussed supra. Competent management of an airport is necessary to protect the public safety and welfare. The operation and management of an airport of the magnitude of Lambert is a subject of immense complexity, riddled with countless variables, and only a flexible, administrative body, able to act when necessity requires it to solve problems as they develop, can be effective.

Therefore, the delegation to the Commission was not unlawful and void and did not require a comprehensive scheme of standards. The regulation promulgated by the Commission pursuant to that delegation was a reasonable police measure designed to meet the needs of the many passengers and members of the public who use the facilities at Lambert. The regulation was affected with the public interest and was a proper subject of the police power and hence could lawfully be delegated to the Commission by the Board of Aldermen. Since the order was promulgated under the authority of Section 2 of Ordinance No. 47223 ("management and operation"), and in the interests of the safety and general welfare of the public, the individual rights of the plaintiffs must be subordinate to this exercise of police power. Turner v. Kansas City, 354 Mo. 857, 191 S.W.2d 612 (1945).

If it is reasonable to protect against economic harm and if an ordinance is not invalid as an unconstitutional delegation of legislative authority for such protection, then it reasonably follows that the Board of Aldermen may delegate to the Commission the power to protect the physical welfare of the flying public. McClellan v. Kansas City, 379 S.W.2d 500 (Mo. banc 1964).

In establishing its order prohibiting student solo flying the Commission acted within the provisions of the authority of the ordinance relating to the management and operation of the airport. "The authority to prescribe regulations must be exercised within the framework of the terms of the ordinance." McClellan, *supra* at 507.

We pass only upon the question of whatever power the City has, it has delegated that power by the ordinance provision to the Airport Commission. Section 2 of the ordinance authorizes such delegation to the Commission. We do not reach the question of whether the order is enforceable, because it may be preempted by federal regulations, or whether it is reasonable, arbitrary or vague. Since the record does not make clear that a determination of additional attacks upon the regulation has been made, the matter is remanded for further proceedings in accordance with this opinion.

The judgment of the trial court declaring Section 4 of the ordinance and the schedule of landing fees illegal and void, and the issuance of an injunction enjoining the City, the Commission and others from enforcing the fees is affirmed. The judgment of the trial court declaring Section 2 of the ordinance to be an unlawful delegation and holding illegal and void the regulation prohibiting student solo flying is reversed and remanded for further proceedings.

SMITH, P. J., and KELLY, J., concur.

WILLIAM M. TURPIN, Special Judge, dissents in separate dissenting opinion.

WILLIAM M. TURPIN, Special Judge (dissenting).

I must respectfully dissent from that part of the majority opinion reversing the

**678**

trial court and upholding the regulation prohibiting student solo flying activities at Lambert.

The majority opinion distinguishes the regulation of aircraft traffic from motor vehicle traffic by saying it is different, the only difference being that motor vehicle traffic is commonly expected to be on the surface of the earth while aircraft traffic may be on the surface and in the air. Regulation is regulation, wherever the traffic is, if it is controlled. No one questions that motor vehicle traffic control may not be delegated by the Board of Aldermen. See § 304.120, RSMo 1969. Where is the difference? See also Cavanaugh v. Gerk, 313 Mo. 375, 280 S.W. 51 (banc 1926).

I do not believe that Section 2 of Ordinance No. 47223 brings this regulation within any of the exceptions mentioned in the majority opinion. As I read Section 2 the "management and operation" of the airport is limited to the physical properties of the airport and says nothing about the regulation of movement of aircraft traffic, on the ground surface or in the air. We cannot read into a regulation a valid delegation of authority by saying it is in the interests of the safety and general welfare of the public. It is not our province to re-write laws or read into them that which is not there. This is properly a legislative function and only the Board of Aldermen may regulate traffic. The cases cited by the majority are authority also for my dissent.

Without additional comment, I do not believe we can say that by virtue of Section 2 of the ordinance that whatever power the city has, it has authority to delegate that power to the Airport Commission.

I do concur in affirming the judgment of the trial court in declaring Section 4 of the ordinance and the schedule of landing fees illegal and void, and the issuance of an injunction enjoining the City, the Commission and others from enforcing the fees, but dissent as to upholding as a lawful delegation the regulation prohibiting student solo flying activities.