DAVIS v. THE STATE OF OHIO.

*Constitutional law—Police power construed—Fortune telling
defined—Statute prohibiting unlicensed persons _from
representing themselves as fortune tellers, constitutional—
Section 13145, General Code—Absence of law granting
licenses immaterial—Presumption favoring constitution-
ality of law—No defense that accused regularly ordained
minister of gospel—Entrapment of defendant immaterial—
Not error to permit jury to view defendant's premises—
Reviewing court can reverse judgment as against weight
of evidence, when—Rule of reversal a prohibitory in-
junction and not discretionary power.*

1. "Police power" of state extends to question of morals,
   health, public convenience, and other questions affecting
   general subject of preservation of state through reasonable
   regulation of matters which affect citizenship.
2. "Fortune telling" means engaging in practice of foretelling
   events, or prophesying future.
3. Section 13145, General Code, prohibiting persons not
   licensed from representing themselves to be fortune tellers,
   *held* not arbitrary and unreasonable, or in violation of
   Section 1 of 14th Amendment, U. S. Constitution, or
   Article I, Sections 1 and 2, Ohio Constitution, but is
   necessary to preserve public morals, safety, and well-
   being.
4. In prosecution under Section 13145, General Code, pro-
   hibiting persons not legally licensed from representing
   themselves to be fortune tellers, absence of law for grant-
   ing of license is immaterial, since absence thereof elimi-
   nates question of discrimination, and cannot be complained
   of by person accused of violating statute, not legally
   licensed.
5. Where constitutionality of law is involved, every presump-
   tion in favor of its validity will be indulged, and pre-
   sumption continues until contrary is shown beyond reason-
   able doubt.
6. In prosecution under Section 13145, General Code, pro-
   hibiting persons from representing themselves as fortune

tellers, occupation or vocation of accused is immaterial, and hence it is no defense that accused was regularly ordained minister of gospel and pastor of church.

7. In prosecution under Section 13145, General Code, prohibiting persons from representing themselves as fortune tellers, fact that prosecuting witness was used to entrap defendant is immaterial.

8. In prosecution under Section 13145, General Code, prohibiting persons from representing themselves as fortune tellers, permitting jury to view defendant's premises was not error, where request was made by defendant's counsel, and court instructed that premises themselves were not evidence, but only to test witness' credibility, and that jury should not discuss matter with any one.

9. Reviewing court can reverse verdict of jury only as matter of law on ground that it is clearly and manifestly against weight of evidence to be determined by projection from record of some fact or circumstance which shocks judicial mind and clearly shows that serious error has been committed by trial court.

10. Rule that reviewing court cannot reverse verdict of jury unless manifestly against weight of evidence is prohibitory injunction, not question of discretionary power in court itself.

(Decided May 23, 1927.)

ERROR: Court of Appeals for Cuyahoga county.

*Mr. Joseph L. Stern,* for plaintiff in error.
*Mr. Carl F. Shuler,* director of law, and *Mr. Leo Weil,* for defendant in error.

SULLIVAN, P. J. This is a proceeding in error to reverse the judgment of the municipal court of the city of Cleveland, wherein the plaintiff in error, Gertrude Davis, in a trial before a jury, was convicted of violating Section 13145, General Code of Ohio, upon which the affidavit for the warrant was issued, and which provides, in substance, that who-

ever, not having been legally licensed so to do, represents himself to be a fortune teller, shall be fined not less than $25, nor more than $100, or be imprisoned in jail not less than 30 days, nor more than 3 months, or both.

A motion to quash and a demurrer filed by the defendant were overruled, and trials were had wherein there was a disagreement as to the first, and a verdict of guilty as to the second, which is the instant case, and these proceedings are to reverse the verdict of the jury and the judgment of the court pronounced thereon.

It is urged that the section in question is in violation of Article XIV, Section 1, of the United States constitutional amendments, and contravenes Sections 1 and 2 of Article I of the Constitution of Ohio. These sections relate to laws which abridge the privileges and rights of citizens of the United States, which deprive persons of life, liberty, or property without due process of law, and which declare all men free and independent, having certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring and possessing property, and freely speaking, writing, and publishing sentiments on all subjects, and which prevent the abridging of liberty of speech or of the press.

It is claimed that by reason of the clause in the statute quoted, to wit, ''not having been legally licensed so to do,'' the statute is licensing in its nature, and that therefore it is only regulatory, as being within the police power in the regulation of certain occupations by license. It is urged that the statute in question failed to provide the manner or method of a license, and that therefore its provisions are unreasonable and discriminatory.

Approaching the question whether the section in question is reasonable in its provisions, we examine the terms of the statute and their effect upon the body politic. The police power of the state extends to questions of morals, health, public convenience, and to other questions which affect the general subject of the preservation of the state through the reasonable regulation of those matters which affect citizenship, because any act which affects the body politic injuriously is a public injury.

A fortune teller is defined by Bouvier (2 Law Dict., p. 1290) as follows:

"One who pretends to be able to reveal future events; one who pretends to the knowledge of futurity. It was a practice during the Middle Ages and still is far from dying out, though laws for its suppression have been passed; in England St., 39 Eliz. c. 4; in Delaware Code of 1852, amended 1893. See *State* v. *Durham,* 5 Pennewill [Del.], 105, 58 A., 1024."

The New International Encyclopedia (Vol. 9, p. 65) defines it:

"The telling of fortunes, whether by acts of astrology, palmistry, or other forms of devination, was an offense at the common law, but by the English vagrancy bill of 1824 (5 Geo. IV, c. 83) any person who pretends to tell fortunes or practice palmistry is liable to summary punishment by imprisonment as a rogue or vagabond. Modern statutes in this country generally class those 'pretending to tell fortunes' as disorderly persons and provide for their arrest and punishment as' misdemeanants."

Such practices have been condemned universally

because they result in the perpetration of fraud, which always results in either private or public injury. Fortune telling means engaging in the practice of foretelling events, of prophesying the future, and it is an axiom of common knowledge that in practical affairs coming events cannot be foretold, even though "they cast their shadows before." Hence the wisdom of the Legislature in passing laws of this nature to protect the unwary and to prevent the poisoning of a stream that might course through the channels of the body politic. There is nothing arbitary and unreasonable in such provisions, but, on the contrary, they are indisputably preservative of public morals and safety, and are necessary to the well-being of society.

That there is no law or authority for the granting of license affects not the situation, for the absence of such a law or regulation eliminates the question of discrimination, and, when there is no such authority, certainly the party complaining comes within the provisions of the statute, because she has not been legally licensed, and this becomes a situation regardless of the existence or nonexistence of the law or the authority. In neither situation has the plaintiff in error been prejudiced, because in each the provisions of the statute apply to her, as she is one "not having been legally licensed." Therefore we see nothing arbitrary or unreasonable in the provisions of the statute, and the authorities are overwhelming that, where the constitutionality of the law is involved, every possible presumption in favor of its validity will be indulged, which presumption continues until the contrary is shown beyond a reasonable doubt. *C., W. & Z. Rd. Co.* v. *Com'rs. of Clinton Co.,* 1 Ohio St.,

77; *State, ex rel. Attorney Gen.,* v. *City of Cincinnati,* 20 Ohio St., 33; and *Marmet v. State,* 45 Ohio St., 63, 12 N. E., 463.

Bearing upon this same subject, we quote the following authorities:

"In determining the construction of a law, the court will give that meaning to its language which will sustain instead of defeat the validity of the law." Cooley's Constitutional Limitations (4th Ed.), 223, 234; *Newland* v. *Marsh,* 19 Ill., 376; *People ex rel. Burrows* v. *Supervisors of Orange County,* 17 N. Y., 241.

"It is axiomatic that the United States is a government of limited enumerated and delegated powers, and that it cannot exercise any authority not granted by that instrument either in express words or by necessary implication." 6 Ruling Case Law, page 135, Section 134.

"The wisdom of the law is not a subject for the court to consider. The court cannot declare a statute unconstitutional and void solely on the ground of unjust and oppressive provisions, or because it is supposed to violate the natural, social, or political rights of a citizen, unless it can be shown that such injustice is prohibited or such rights guaranteed or protected by the Constitution." Cooley on Constitutional Limitations, 202, 204.

"It is a well-established rule that judges will always lean in favor of the validity of a legislative act; that, if there be a reasonable doubt as to the constitutionality of a statute, they will solve the doubt in favor of the statute." 1 Brice's American Commonwealth, 430; *Grenada County Supervisors*

v. *Brogden,* 112 U. S., 261, 5 S. Ct., 125, 28 L. Ed., 704.

"It has been a uniform rule in this court, when the constitutionality of a statute has been under consideration, to so construe and interpret its provisions, if possible as to sustain and not defeat the law." *McComas* v. *Krug,* 81 Ind., 327, 42 Am. Rep., 135; *Robinson, Treas.,* v. *Schenck,* 102 Ind., 307, 319, 1 N. E., 698.

"Only in cases, however, where the Legislature exceeds its powers, will the courts interfere or set up their judgment against that of the Legislature. Where an act has a real and substantial relation to the police power, then no matter how unreasonable nor how unwise the measure itself may be, it is not for the judicial tribunals to avoid or vacate it upon constitutional grounds; nor will the courts assume to determine whether the measures are wise, or the best that might have been adopted; or whether such laws are invalid on the grounds of inexpediency, or whether they bear any real or substantial relation to the public welfare." 6 Ruling Case Law, pp. 243, 244.

Able counsel for plaintiff in error regards the clause above quoted, to wit, "Not having been legally licensed," as an infirmity in the statute, which, in and of itself, destroys its constitutionality and vitiates its effect. This same section of the statute in *Haas* v. *State,* 26 C. C., (N. S.), 545, decided in 1917 by the Stark County Court of Appeals, was under discussion in an opinion by Judge Shields, and a reading of the syllabus shows its direct applicability to this specific complaint made by plaintiff in error as to this alleged weakness of the statute. We quote the syllabus as follows:

"Section 13145, providing that 'whoever, not having been legally licensed so to do, represents himself to be an astrologer, fortune teller, clairvoyant or palmister, shall be fined,' etc., does not violate the section of the Bill of Rights guaranteeing religious freedom, but is a valid and enforceable enactment.

"It is the representation of possession of power to foretell future events where made by persons who are without a license so to do, which constitutes the gist of the offense, and exhibits disclosing the tenets of the religious society of which the accused is a member are immaterial in determining whether the accused has unlawfully made such representations."

It is claimed in the record that the defendant below, Gertrude Davis, is a regularly ordained minister of the gospel, and shortly after her arrival in Cleveland became pastor of the Asti Universal Church, Spiritualist, located at 1957 East Fifty-Ninth street.

One's occupation or vocation does not destroy the applicability or effect of the statute, and there is no exemption in favor of any person by reason of vocation, profession, or otherwise. It is also claimed in the record that Henry S. Peters, the prosecuting witness, was the instrumentality of the Cleveland Press, through the Scripps-Howard Company, publishers thereof, and that he proceeded to entrap the plaintiff in error. There is substantial evidence in the record specifically disclaiming any purpose to entrap the plaintiff in error, and the witness Peters makes an express denial thereof; but we do not think that this circumstance is material in the record of the case, for the reason

that the only question at issue is whether the statute was violated and whether the record is free from error of a prejudicial nature. The existence of public agencies to detect offenders under statutes similar to the one at bar is universal, and the unlawful traffic in so-called prophecies begat the necessity and the wisdom of agencies of this character.

We have examined the record to ascertain whether the court erred in the admission of evidence, in its ruling upon the motion and demurrer, or in the exercise of sound discretion, and whether the verdict is clearly and manifestly against the weight of the evidence, as well as the other errors charged, and it is our judgment that with respect to them there is no prejudicial error in the record warranting the reversal of the judgment below.

It is charged that there was irregularity at the trial on the part of the court, the jury, and the prosecuting attorney in viewing the defendant's premises. We find that the request was made by learned counsel for the defendant, and that the instructions given by the court were full and complete, and that they were not violated in any degree that warrants a finding of prejudice or a reversal of the judgment below, based thereon. The instructions of the court to the jury upon that subject are as follows:

"Now, members of the jury, you are permitted to go out to this place to view it so that you may understand the testimony as it has been detailed on the witness stand. The room itself is not evidence, but it is only to test the credibility of the witnesses in describing it to you; the testimony is

what you get from the witness stand. You are not
to have any discussion with any one about that.
If you want any information that is at all germane
or applicable to this controversy, make your request
to the bailiff.  Do not talk to counsel or to the
parties while there.  Hold yourselves as much in
reserve there as you do here, and have a view of
the premises so that you will have a picture of it
when you are sitting here and listening to the
argument and other testimony that is further to
be adduced from the witnesses.  Do not want to
have any argument or controversy out there about
the subject; if you want to have anything pointed
out that is spoken of here in the testimony, make
your request to the bailiff, and the bailiff will speak
to counsel and have them point it out.''

There is nothing in the record to show any mis-
conduct on the part of the court, jury, or prosecut-
ing attorney, and with respect to the court we find
that its duty was fully performed by the instruc-
tions above quoted, but in *Warner* v. *State,* 104
Ohio St., 38, 135 N. E., 249, which has a distinct
bearing upon *Parker* v. *State,* 18 Ohio St., 88, we
find the following statement:

''The failure by a court to perform its statutory
duty of admonishing the jury concerning their con-
duct while separated during the trial does not con-
stitute reversible error, where it is not shown that
the jury were in fact guilty of misconduct or in-
discretions, and where it further appears that
counsel for plaintiff in error observed the omission
and did not call the attention of the court thereto.''

We have examined the charge of the court, and
we do not find any prejudicial error therein, but
we find, and keep in mind, *Wolf* v. *State,* 24 C. C.,

(N. S.), 526, and *American Steel Packing Co.* v. *Conkle,* 86 Ohio St., 117, 99 N. E., 89. A very significant excerpt from the record is as follows:

"Now, have I omitted anything or stated anything erroneously that you want to have corrected at this time? Now is a good time to correct it.

"Mr. Stern: There is none.

"The Court: No further request—all right."

The above shows that the court gave counsel every opportunity to correct any errors in the charge, but counsel by his language fully acquiesced in the instruction, and bearing upon this aspect of the case we cite *Goldstein* v. *Klein,* 11 N. P., (N. S.), 1, 25 O. D., (N. P.), 54, affirmed *Klein* v. *Goldstein,* 14 C. C., (N. S.), 586, in which it was held that if the court calls the attention of one of the parties to a possible omission in the charge and asks him if he desires a charge in that subject, and the attorney for such party states in court that he declines to make any other requests, except those made in the special charges, such statement is a waiver of an omission to give a charge which was not included in the general charge and which was not asked for by the special charges. And in the case of *Plaut* v. *Jacobson,* 19 N. P., (N. S.), 335, 27 O. D. (N. P.), 379, it was held that an omission in the charge of the court cannot be regarded as error, especially if the court asks the attorney for the defeated party whether such party wishes the court to charge on any additional point and such attorney says that he does not desire any further charges.

Upon the question as to whether the verdict is clearly and manifestly against the weight of the evidence, we bear in mind the authorities which a

reviewing court is bound to follow, holding that it is only as a matter of law that the verdict of a jury may be reversed on the ground that it is clearly and manifestly against the weight of the evidence, and this is determined, not by the personal judgment of members of the court, but by there projecting from the record some fact or circumstance which shocks the judicial mind and clearly and convincingly shows that a serious mistake or error has been committed by the tribunal below. Unless this status appears in the record, reviewing courts cannot reverse upon the weight of the evidence, and this is a prohibitory injunction, based upon ample authority, and not a question of discretionary power in the court itself.

Holding these views, the judgment of the lower court is hereby affirmed.

*Judgment affirmed.*

VICKERY and LEVINE, JJ., concur.