BEULAH TURNER, Appellant, v. KANSAS CITY, MISSOURI, a Municipal Corporation, JOHN B. GAGE, Mayor of said City, LOWELL R. JOHNSON, W. O. BIXBY, E. M. DOBBS, FREDERICK H. OLANDER, Police Commissioners of said City, RICHARD R. FOSTER, Chief of Police of said City, D. L. DENNISON, Police Lieutenant of said City.—No. 39540.—191 S. W. (2d) 612.

Division Two, December 3, 1945.

Motion for Rehearing or to Transfer to Banc Overruled, January 8, 1946.

*N. R. Fischer* and *E. H. Gamble* for appellant:

860

*Wm. E. Kemp,* City Counselor, *John J. Cosgrove, Arthur R. Wolfe,* Assistant City Counselors, and *Franklin D. Glore* for respondents.

BOHLING, C.—The issue for determination is whether an ordinance of the City of Kansas City suppressing and punishing fortune telling as an offense is constitutional and valid. We answer in the affirmative.

Beulah Turner owns and operates a cafe in Kansas City and in connection therewith conducts a business "commonly known as for-

tune .telling'' for pay. She ·instituted this suit to enjoin said City and certain individuals, officers of said City charged with the enforcement of its ordinances, from enforcing the provisions of Ordinance No. 10-14 (quoted in the margin*) prohibiting fortune telling for pay. Her bill was dismissed for failure to state a cause of action. She thereupon perfected this appeal.

Many issues are presented as bearing on the ultimate conclusion. Some may be eliminated. With commendable frankness counsel, for plaintiff stated that if the provisions in the City Charter of Kansas City were valid, then ''we are out.'' The primarily contested issue is the validity of the charter provision.

Article 9, Sec. 16, of the Constitution of the State of Missouri, provides: ''Any city having a population of more than one hundred thousand inhabitants may frame and adopt a charter for its own government, consistent with and subject to the Constitution and laws of the State . . .'' Section 7589, R. S. 1939, conforms to the quoted provisions.

The City of Kansas City adopted a charter under the quoted provision. Its charter, after defining what constitutes the municipal corporation of ''Kansas City,'' provides in part as follows:

''Subject only to the necessary extent of limitations imposed by the constitutions and laws of the United States and the State of Missouri, it shall have power: . . .

''To regulate, prohibit, or suppress any act, conduct, pursuit, employment, practice, . . . whatsoever, which may be injurious or detrimental to the public morals, health, safety, comfort, convenience, prosperity or general welfare . . . ; . . . to regulate or prohibit . . . fortune tellers, clairvoyants and palmists, . . . ; and to punish any and all persons who may engage in such game or games or who keep or frequent such houses or places, or who set up or permit the same, or who conduct lotteries, or sell lottery tickets . . .'' Article I, Sec. 1, Para. 44, Charter of Kansas City. See also paragraphs 29, 61 and 63 of said section and article, they being more general in their terms.

Plaintiff's position is that the exercise of any ''governmental power,'' such as an exercise of the police power here involved, by

---

*Ordinance 10-14 provides: "It shall be unlawful for any person for pay to tell or pretend to tell fortunes or reveal or attempt to reveal future events in the life of another or by means of occult or psychic powers, faculties or forces, clairvoyance, psychology, psychometry, spirit-mediumship, prophecy, astrology, palmistry, necromance, cards, talismans, charms, potions, magnetism or magnetized articles or substances, oriental mysteries or magic of any kind or nature, to undertake or pretend to find or restore lost or stolen money or property, to undertake or pretend to locate oil wells, gold or silver or other ore or metal or natural product, to undertake or pretend to restore lost love, friendship or affection, to undertake or pretend to unite, or reunite or to find lovers, husbands, wives, lost relatives or friends. . . ."

municipalities operating under charters adopted under Art. 9, Sec. 16, of the Missouri constitution must be conferred by ▮▮▮ statute, expressly or by, necessary implication; and, hence, the attempt by Kansas City to arrogate to itself governmental power in its charter, absent an express statutory delegation of such power, is futile and void.

▮▮▮ Defendants state they recognize "that a municipality may not exercise a governmental function—taxation, police power—unless such power has been given, either by statute or by charter, and then only to the extent so given"; "that the power so given may be withdrawn by the State"; but they contend that "until it has been withdrawn the city has full power to proceed in any reasonable exercise thereof." The instant review may be determined on rulings short of the contentions advanced. .

Plaintiff cites cases considering the different functions of municipal governments; that is, mere corporate functions and functions of a governmental nature. The latter embraces exercises of the police power, such as here involved, over which Missouri municipalities exercise delegated authority. The cases stressed are: State ex rel. Garner v. Missouri & Kan. Tel. Co. (Banc, 1905), 189 Mo. 83, 99, 100, 88 S. W. 41, 43; State ex rel. Carpenter v. St. Louis (Banc, 1928), 318 Mo. 870; 893, 2 S. W. 713, 720[8-10]; Kansas City v. J. I. Case Threshing Mach. Co. (Banc, 1935), 337 Mo. 913, 925, 926, 87 S. W. 2d 195, 202; Kansas City v. Frogge (Banc, 1944), 352 Mo. 233, 240, 243, 176 S. W. 2d 498, 501, 503.

The strongest of these cases supporting plaintiff is State ex rel. Garner v. Missouri & Kan. Tel. Co., hereinafter designated the Garner case.* That was a mandamus proceeding to compel the Telephone Company to furnish Garner telephone service at the rate or charge established by an ordinance. A charter provision authorized the city, by ordinance, "to regulate the prices to be charged by telephone . . . companies . . . " The charter also contained a general welfare clause. The precise ruling of Court. en Banc was that the Missouri Constitution (Art. 9, Sec. 16) did not authorize the adoption of charter provisions vesting the City with power to regulate, by ordinance, the charges for telephone service within the city; and, also, that specified statutes (Laws Mo. 1887, p. 51, Secs. 50 and 51, R. S. 1889, Secs. 1889, 1890) vesting the City with exclusive control over the streets and the regulating of the exercise of a public franchise

---

*The holding in the Garner case was by a divided court; five judges concurring; one dubitante, and another dissenting. Thoughts therein are found reiterated in the introduction to the charter and ordinances of Kansas City for 1909. Court en Banc again had trouble with what constituted municipal and governmental powers in 1912 in State ex rel. Graham v. Seehorn, 246 Mo. 541, 151 S. W. 716, and the majority and minority opinions with the vote of the individual judges in that case are of interest.

in the streets of the City were restricted to the purposes of municipal government, which was said to embrace the regulation of poles, wires and other obstructions to the end that the use of the streets by the telephone company would not unduly interfere with the use of the streets by the public; but that said statutes did not authorize the City to regulate the charge for telephone service. The opinion contains some broad observations. Making a distinction between corporate or municipal and governmental functions to be exercised by cities, the court stated the constitutional authorization (Art. 9, Sec. 16) was restricted to "powers incident to its municipality," municipal functions, and, that the State reserved the governmental powers (embracing powers "essential to the happiness and well being of the people of a particular city, yet which are not of a character essentially appertaining to the city government") "to be exercised by itself, or it may delegate them to the city, but until so delegated they are reserved." The court considered the issue before it to involve "the protection of the rights and regulation of the duties of the inhabitants in the city as between themselves." (189 Mo. l. c. 100, 88 S. W. l. c. 43.) The conclusion followed that the charter authorization to regulate the charge for telephone service was not authorized by Art. 9, Sec. 16, of the Constitution and said charter provision and the ordinance adopted thereunder were unconstitutional and void. However, in considering Sec. 50 of the Laws of 1887, supra, the Court stated: "The exclusive control of its streets as granted in section 50 is an attribute of municipal authority, and could have been adopted in the charter, under the authority of the Constitution, without the express ▮▮▮ sanction of the General Assembly." (l. c. s. 101 and 43, respectively.)

Now: Long prior to the Garner case it was recognized that the regulation of the uses of public streets and highways for the protection of the public rested primarily in the State in the exercise of its police power—a governmental function. Ferrenbach v. Turner (1885), 86 Mo. 416; State ex rel. Laclede Gaslight Co. v. Murphy (Banc, 1895), 130 Mo. 10, 31 S. W. 594, 31 L. R. A. 798, affirmed 170 U. S. 78, 42 L. Ed. 955, 18 S. Ct. 505; 40 C. J. S., p. 240, Sec. 232; 25 Am. Jur., p. 544, Secs. 253-255. So, the Garner case first broadly prevents constitutionally charted municipalities exercising governmental, as contradistinguished from municipal, functions conferred by charter provision unless the specific governmental functions also be expressly delegated by statute to said municipalities and thereafter proceeds to sanction the appropriation of governmental functions in charter provisions by municipalities irrespective of any express delegation of such function by statute.

The point to peg in the Garner case is: The court was ruling the validity of a charge for telephone service established by the municipality. The regulation of rates for telephone service operates upon

private property devoted to general public use. The Garner case viewed this in the light of an adjustment of rights and duties between individual citizens of the community. That power in Missouri, the regulation of such charges, was considered not to exist in municipalities unless-expressly and specifically delegated by the State. See also St. Louis v. Bell Telephone Co. (1888), 96 Mo. 623, 10 S. W. 197, 2 L. R. A. 278, 9 Am. St. Rep. 370; 3 Pond, Public Utilities, Sec. 519; 43 Am. Jur., p. 627, Sec. 86; McQuillin, Municipal Corporations, Sec. 1877 et seq. St. Louis v. Bell Telephone Co. (sometimes herein referred to as the St. Louis case), is the first case cited in the Garner opinion in support of the ineffectiveness of explicit charter provision to confer power upon municipalities to prescribe maximum rates for telephone service within the City. The question in the St. Louis case was the validity of an ordinance prohibiting an annual charge for telephone service in excess of $50. The court there painstakingly reviewed the St. Louis charter provisions and concluded no provision of the St. Louis charter delegated that authority to the municipality, leaving an implication, as we read it, that the ordinance might have been sustained had the charter authorized its enactment. This feature of the St. Louis case is not commented on in the Garner case. The two cases, however, are in harmony in the results reached, which may be justified upon the reasoning indicated therein that establishing charges for telephone service is such a high governmental prerogative as to require an express and specific delegation to vest such power in a municipality.

State ex rel. Carpenter v. St. Louis (Banc, 1928), 318 Mo. 870, 892, 2 S. W. 2d 713, 719, quotes and comments on the portion of the Garner opinion ruling the charter grant of power ineffective as follows: "Thus the independence of the city from legislative control is limited to strictly municipal matters. That broad statement, however, may be qualified. The city's charter powers are not limited to its mere corporate functions. Between that narrow field and territory occupied by general legislation is ground upon which the city under its charter powers may venture if it sees fit, but not contrary to general law, even though its action is local in effect."

Kansas City v. J. I. Case Threshing Mach. Co. (Banc, 1935), 337 Mo. 913, 926, 87 S. W. 2d 195, 202, after reviewing the decisions on the charter power of municipalities organized under the Missouri constitution and stating the principle on which they might be harmonized with respect to municipal corporate functions, continues: "On the other hand, in matters which are governmental functions, the state retains control and, as to such matters, the provisions of the city charter, although adopted under the constitutional provision therefor, must be and remain consistent with and subject to the statutes of the state enacted by the Legislature."

" 'Subject to,' that is, placed under the authority, the dominion of the constitution and laws of the State." Ewing v. Hoblitzelle, 85 Mo. 64, 76.

" '. .- . consistent with and subject to the Constitution and laws of the State' . . . means that inconsistent charter provisions or ordinances, concerning the exercise of governmental functions, are void." State ex rel. Rothrum v. Darby (Div. I, 1940), 345 Mo. 1002, 1013, 137 S. W. 2d 532, 537.

We think the holding in Kansas City v. Frogge (Banc, 1944), 352 Mo. 233, 243, 176 ▮▮▮ S. W. 2d 498, 503, on the issue involving an exercise of the police power, is in harmony. It expressly states that the Kansas City "use tax" ordinance there questioned should be considered in its relation to the Missouri Sales Tax Act and, when so considered, the ordinance was not to be sustained under the City's police power.

State ex rel. Reynolds v. Jost (Banc, 1915), 265 Mo. 51, 76, 175 S. W. 591, 595, Ann. Cas. 1917D, 1102, states: "There is a law of the State which covers the governmental question of State interest, and it makes no difference whether such law antedates the city charter or not, such city charter must give way to the general law." See also State ex rel. Carpenter v. St. Louis, 318 Mo. 870, 896, 2 S. W. 2d 713, 721.

State ex rel. Field v. Smith (Banc, 1932), 329 Mo. 1019, 1031, 49 S. W. 2d 74, 78, states: "Kansas City has ample authority under its charter to organize and maintain a department of police . . . until such time as the Legislature may in its wisdom see fit to provide for the city, by a constitutional statute, a system of metropolitan police."

The cases above mentioned establish, whether therein explicitly stated or not, that the language used in the Garner opinion is too broad wherein it requires an express delegation in every instance of governmental functions to municipalities operating under a constitutional charter. Kansas City v. J. I. Case Threshing Mach. Co., 337 Mo. 913, 924, 927, 87 S. W. 2d 195, 201, 203[11], mentions the existence of an implied power to appropriate in charter provisions the taxing power to a limited extent in the absence of expressed delegation by statute. Likewise Kansas City v. Frogge, 352 Mo. 233, 241[5], 176 S. W. 2d 498, 502[6]. Municipalities have no inherent police power. A constitutional grant in general language to certain municipalities to frame a charter for their own government, from the very indefiniteness of the grant, ought to carry with it some implied authority to appropriate, subject to the restrictions expressed in the grant, such powers in the framing of their charters as are essential to the appropriate discharge of their functions as a governmental entity. The necessity for the exercise of the police power increases with the increase in the density of the population. Urban

centers experience greater need for its exercise than rural communities. The denser the population the greater the need for more varied and more detailed regulations for the safety, the health, and the general welfare of the inhabitants of the municipality. "It is not necessary that the police power should .be granted to municipalities in expressed words, for by the organization of a city or borough within its .borders the state imparts to its creature, the municipality, the powers necessary .to the performance of its functions, and to the protection of its citizens in their persons and property, and the police power is one of these . . . . '' 16 C. J. S., p. 548, n. 50. Bluedorn v. Missouri Pac. Ry. Co. (Banc, 1891), 108 Mo. 439, 443(1), 18 S. W. 1103, 1105, 32 Am. St. Rep. 615, considered the St. Louis general welfare charter provision authority for the enactment of an ordinance limiting the speed of trains within the city—a police regulation. Merz v. Missouri Pac. Ry. Co. (1886), 88 Mo. 672, 676, 1 S. W. 382, 383, considered the general supervision of the city over the police sufficient authority for the enactment of the same ordinance. Consult Ex parte Williams (Div. II, 1940), 345 Mo. 1121, 1127[3], 139 S. W. 2d 485, 488[5-9]; City of St. Louis v. Baskowitz (Div. I, 1918), 273 Mo. 543, 565(III), 201 S. W. 870, 876(III); St. Louis Gunning Adv. Co. v. St. Louis (Banc, 1911), 235 Mo. 99, 146, 149, 137 S. W. 929, 942[1]; Kansas City v. Neal, 49 Mo. App. 72, 78(I); 11 Am. Jur., p. 988, Sec. 256; 37 Am. Jur., p. 911, Secs. 281, 283, 288. The instant ordinance is not an attempt to regulate affairs between individual citizens as the ordinance was considered to be in the Garner case, supra. Its purpose is the protection of the citizens of the community in the suppression of acts of others therein tending to deceive and defraud. See also Davis v. State, 118 Oh. St. 25, 160 N. E. 473, affirming 26 Oh. App. 340, 159 N. E. 575; Mitchell v. City of Birmingham, 222 Ala. 389, 133 So. 13; McMasters v. State (Okla. Cr. Rep.), 207 Pac. 566, 29 A. L. R. 292; 27 C. J. S., p. 283, Secs. 1, (3), (b); 66 C. J. 405, Sec. 12; 23 Am. Jur., p. 711, Fortune Telling; Annotations, 43 L. R. A. (N. S.) 203; Ann. Cas. 1914A, 900, 14 A. L. R. 1489. St. Louis v. Hellscher, 295 Mo. 293, 297(III), 242 S. W. 652[3], is a Missouri case involving a municipal prosecution for. fortune telling. We have observed that the charter provisions of Home Rule municipalities within the limits of the constitutional grant have the force and effect of lawful statutory enactments delegating authority. ▆▆▆ Kansas City v. Frogge, 352 Mo. 1. c. 240, 176 S. W. 2d 1. c. 501, and cases cited; Kansas City v. J. I. Case Threshing Mach. Co., 337 Mo. 1. c. 925, 87 S. W. 2d 1. c. 201; West Dig., Tit., Municipal Corps., Sec. 48(2).

We hold plaintiff has failed to establish error.

▆▆ Defendants also assert that Kansas City is within the class of municipalities empowered by statutory delegation to ". . . enact all needful ordinances for preserving order, securing persons or prop-

erty from violence, danger and destruction, protecting public and private property and for promoting the general interests and insuring the good government of the city" et cetera. (Section 7644, R. S. 1939.) Plaintiff says the quoted provisions are subject to the rule of ejusdem generis and when so construed are not sufficiently broad but are limited, we understand, to the "suppression of mobs, footpads, burglaries, and other crimes of violence." So far as urged upon us by the City, not disputed by plaintiff, this is the only statutory delegation to Kansas City of municipal police power. The ascertainment of the intention of the lawmaker is the primary and fundamental factor in the construction of statutes. 59 C. J., p. 948, Sec. 568; 50 Am. Jur., p. 200, Sec. 223; West, Mo. Dig., Tit., Statutes, Secs. 180-186. We think it too narrow a construction to hold that the General Assembly intended to vest Missouri cities having between 200,000 and 500,000 inhabitants with full authority to protect against acts of violence to individual citizens and items of property, usually fully covered by state legislation, and withhold from them all the other innumerable governmental functions peculiarly within a proper exercise of the police power and so essential to the community life of a densely populated urban center; its public safety, health, morals, convenience, welfare, interest, and general prosperity, varying with the specific locality and the changing requirements of life from time to time. Plaintiff does not contend the words: ". . . all needful ordinances for preserving order" are limited by what follows. She contends the closing words "and for promoting the general interest and insuring the good government of the city" are limited by the particular preceding words. The quoted phrases are in harmony. We think, considered together, they evidence a legislative intent to delegate authority to the extent of the general words used. The police power extends to all great public needs. Ex parte Williams (Banc, 1940), 345 Mo. 1121, 1127[3], 139 S. W. 2d 485, 489[7, 8]; City of St. Louis v. Baskowitz, 273 Mo. 543, 556, 201 S. W. 870, 873 [2]; 3 McQuillin, Municipal Corporations, Secs. 950, 1077, n. 12; 43 C. J., p. 176, III, p. 203, IV; 37 Am. Jur., p. 908, Sec. 280 et seq. Our conclusion on the scope of Sec. 7644 is not out of harmony with the observation in State ex rel. Field v. Smith, 329 Mo. 1019, 1031, 49 S. W. 2d 74, 78, respecting the authority of Kansas City under its charter to organize and maintain a department of police (quoted supra); as, if Kansas City were without authority to enact valid ordinances to be administered by its police, its department of police would be of restricted value.

Plaintiff has failed to establish error on this contention of defendants.

Plaintiff says that the ordinance as a whole is invalid because the second provision thereof is unreasonable; that is, the provision forbidding any person to "reveal or attempt to reveal future events

in the life of another''; admittedly not contending that the prior provision making it unlawful ''for any person for pay to tell or pretend to tell fortunes''— the provision we hereinbefore have been discussing—is void because of unreasonableness. Plaintiff argues the questioned clause will prevent engineers advising contractors how to achieve given construction results; a physician advising a patient how to improve his health; a lawyer applying the law to facts related by his client; a scientist advising a manufacturer how to produce a synthetic product; a banker advising a customer he will extend credit; an inventor predicting he will enable people to overcome space at unheard of heights and speeds, and a radio genius predicting he will carry the human voice from city to city, state to state, and nation to nation. The ordinance provisions are quoted in the margin at the beginning of this opinion. Plaintiff is not engaged in any of the endeavors last above specified. Usually a litigant champions his own rights; not the rights of others. The ordinance, read as a whole, evidences a purpose to protect against deception and fraud through the suppression of the acts therein enumerated. Insofar as the matters mentioned by plaintiff are the result of legitimate business endeavors, they are without the pale of the ordinance provisions. Plaintiff's position twists the language and warps the manifest purpose of the ordinance. It is without merit. Plaintiff's contentions are founded upon the ordinance invoking the police power. Individual personal and property rights are subordinate to an appropriate exercise of the police power. Bellerive Inv. Co. v. Kansas City, 320 Mo. 969, 981, 13 S. W. 2d 628, 634[1]; and authorities cited at the close of ·discussion on the City's charter powers. It will be soon enough to rule individual instances under the ordinance as they occur and are presented.

The judgment is affirmed. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.