JOHN McCULLOUGH, D/B/A BLACK & WHITE TRANSIT CAB CO., RESPONDENT, v. CITY OF SPRINGFIELD, MISSOURI, ALBERT AYRE, COMMISSIONER OF PUBLIC UTILITIES OF THE CITY OF SPRINGFIELD, MISSOURI AND GEORGE WALKER, CHIEF OF POLICE OF CITY OF SPRINGFIELD, MISSOURI, APPELLANTS. SPRINGFIELD YELLOW CAB CO., INTERVENOR.—236 SW (2) 753.

Springfield Court of Appeals. February 1, 1951.

*Howard C. Potter* for Appellants.

*Walker & Daniel,* for Respondent, Frank B. Williams, of Counsel.

BLAIR, J.—The original respondent died, before the time the case was to have been argued and submitted in this Court. His executrix entered her appearance and filed a brief, and the case was argued later.

This is a dispute in an injuction and declaratory judgment proceeeding. Black & White Cab Company, said to have been owned by John McCullough in his lifetime, and the City of Springfield are the litigants in dispute over an ordinance of said city, affecting cab fares to be charged within said city. The Springfield Yellow Cab Co., intervenor below, did not appeal, and was not represented in this Court.

The case was originally set for the March Session, 1950, of this Court. On the day preceding such setting, the death of Mr. McCullough occurred. The case was especially set down and argued on December 5, 1950. The only question argued here was the power of ap-

pellant city to pass an ordinance fixing the minimum fares of taxicabs in said city.

Both respondent and appellants have agreed that this Court has appellate jurisdiction, but, before discussing the merits of the case, we feel that we should first satisfy ourselves that we have such appellate jurisdiction, even though such appellate jurisdiction is conceded by the parties.

The cases in Sections 21 and 22 of the Missouri Digest, on the subject of Appeal and Error, cover the question. Our appellate jurisdiction is so well settled by the authorities therein cited that there is no need of citing any more cases.

The only possible part of Section 3 of Article V of the 1945 Constitution of Missouri, which could, by any possibility, be said to confer appellate jurisdiction on the Supreme Court, is found in that part of the Constitution which provides that the Supreme Court has appellate jurisdiction in all civil cases where a political subdivision of the State *as such* is a party. While appellant is a subdivision of the State, it is not a party *as such*. Hence, we are satisfied that we have such appellate jurisdiction.

Turning now to the merits of the case, the Circuit Court was informed by the petition that, on June 23, 1949, appellant, as a city of the second class of Missouri, passed an ordinance providing that minimum taxicab rates, for direct service, in such city, should be 50 cents, for the first passenger, and 30 cents for each additional passenger. The minimum charge for such taxicab service had previously been 25 cents. The argument is that the City of Springfield is without power to enact such an ordinance. All of the other questions in the case were dropped by the wayside.

Appellants argue orally and in brief that a city has the power to regulate the use of its streets and that such power includes the power to fix rates, to be charged by taxicab companies, for such use of the streets.

On the other hand, as we understand respondent, he admits the power of the city to regulate the use of its streets, but denies that such city has the power to fix rates for the service of taxicabs on its streets. Appellants say:

"The sole question in issue is whether the City of Springfield, a city of the second class, has charter power to enact a portion of an ordinance referred to in the pleadings as Section 547, which fixes the rate to be charged by plaintiff and others engaged in the business of operating taxicabs within the corporate limits of the City of Springfield."

The final judgment of the Court below, among other things, was as follows:

"And the Court finding and ruling as a matter of law that under the charter of the City of Springfield and the statutes and

law made and provided, that the Defendant the City of Spring-field is not given the power, and does not have the power, to regulate or prescribe the price that may be charged by taxicab operators for their service, and ruling as a matter of law that the Defendant City of Springfield does not have the power or authority under its charter or the law to set by ordinance, or otherwise, the rate of fares for the transportation of passengers by taxicab.''

The petition is very long and pleads many alleged facts, which respondent argues do not justify the fixing of taxicab fares, as specified in the ordinance. We will confine ourselves to the sole question, agreed upon and argued in this Court. That question is as to the power of appellant city to fix the rates to be charged in it for taxicab service.

The case was transferred to Division 2 of the Greene County Circuit Court, on order of the appointed successor to Hiram McLaughlin, deceased, on January 14, 1950, as such appointed judge had formerly been an attorney in the case. The Judge of Division 2, Honorable Warren L. White, Judge of that Court, on February 4, 1950, overruled the motions for a new trial of appellants and intervenor, previously filed, during the lifetime of Judge McLaughlin.

On February 11, 1950, Judge White set aside his previous orders overruling the motions for a new trial of the intervenor and appellants and set aside the previous order of Judge McLaughlin, to the same effect.

On February 11, 1950, Judge White entered a judgment of his own, holding solely that appellant city had no power to enact Section 547 of Ordinance No. 613, Council Bill 9815, and enjoined appellant city from enforcing the ordinance and dismissed appellants' answer and intervenor's petition and answer.

On February 14, 1950, defendant, the City of Springfield, as appellant, filed its notice of appeal. The time for preparation and filing of the transcript, was later extended to July 14, 1950.

There is no need to cite authorities on the proposition that appellant was empowered to regulate the use of its streets by taxicabs. There seems to be complete agreement on the proposition. Where the parties disagree is as to what is meant by *power to regulate*. Appellant contends that power to regulate authorized it to fix rates. Appellant first cites paragraph XVIII of Section 6609 R. S. 1939. That is a general statute and does not name taxicabs specifically. It gives cities of the second class power by ordinance to license, tax and regulate, among other things, omnibuses and hansom cabs, all vehicles, private or public, and all occupations, professions, trades, pursuits, etc., not already enumerated, and to fix the license tax to be paid therefor. Taxicabs were not enumerated by name.

There does not appear to be any need to set out Section 6609, para-

graph XVIII in full, since there does not appear to be any controversy over the proposition that the City of Springfield has the power to regulate taxicabs. That section is very long.

The difference in opinion, is as to what is meant by "regulate." Appellants contend that regulate means everything, from the use of the streets by taxicabs to what the public shall pay for the service rendered by them. Following the citation by appellants of Section 6609, paragraph XVIII, appellants cite a number of cases from states other than Missouri. We have examined all of the cases cited in appellants' Points and Authorities. In some of them power to fix taxicab rates was granted to the cities affected by statute. In other cases, it was held that the use of the word "regulate" taxicabs, included the power to fix rates for their service. There is no need to cite such cases, since they were decided by the courts of states, other than the courts of Missouri.

Appellants then make the following statement in paragraph III of their Points and Authorities, to-wit:

"The authorization in the charter for the city to regulate the use of streets gives the city the power to control and regulate taxicabs, *including the fixing of rates.*" (The emphasis on the last five words is ours, and not appellants.)

We are particularly interested in what the Supreme Court of Missouri has said about the Legislature of Missouri.

In their Points and Authorities appellants cite sub-paragraph XI of Section 6609, R. S. Mo. 1939. We do not see any need of quoting it, since it refers to the use of streets and other public places, and does not at all support the proposition contended for by appellants.

Appellants then cite two Missouri cases. The case of the City of Springfield v. Stevens, 216 S. W. (2d) 450, 358 Mo. 699, was not a case fixing the rates to be charged by taxicabs, but was a case, by the Supreme Court of Missouri en Banc, involving the conduct of persons, while driving taxicabs. Judge Ellison, who wrote the majority opinion, said:

"Defendant was convicted of violating an ordinance of the City of Springfield prohibiting taxicab drivers from having, in their possession carrying or transporting in their taxicabs intoxicating beverages of any kind * * *."

There is no question in our minds, nor do we feel that there is any question in the minds of the parties to this suit, that a city like Springfield has the power to regulate the conduct of men, when operating taxicabs. That power—not rates of taxicab service—was the question in that case.

Only four of the seven judges of the Court en Banc, agreed to the opinion. In the dissenting opinion of Judge Douglas, with whom Judges Tipton and Conklin concurred, it was said: That the ordinance was the regulation of the use of liquor, and not one to regulate

taxicabs in the use of the streets. No one, in any opinion, discussed the power of the city to fix rates for taxicab service.

Ex Parte Lockhart, 171 S. W. (2d) 660, 350 Mo. 1220, was a habeas corpus case, by the Supreme Court en Banc, and involved the right of the City of St. Louis to impose a tax upon taxicabs and other vehicles for use of the city streets. The right of that city to fix rates for taxicab service was in no way involved.

Appellants then cite cases from five other states, in support of the proposition that the City of Springfield has the power to fix rates for taxicab service. What we have said above, applies equally to all of the cases from states, other than Missouri, cited by appellants.

Respondent makes the following statement in paragraph I of its Points and Authorities, to-wit:

"The power to regulate taxicabs gives the City the right to make police regulations as to the mode in which the designated employment may be conducted, but does not give the City power to fix rates of .fare, particularly minimum rates, which taxicab owners or operators must collect from passengers, under penalty of fine as for misdemeanor."

This statement seems to be well supported by the cases cited. The first of such cases, is the City of St. Louis v. Bell Telephone Company, 10 S. W. 197, 96 Mo. 623. The city there had an ordinance which provided that, "The annual charge for the use of the telephone in the City of St. Louis shall not exceed $50.00." That was not a taxicab case; but the reasoning in it applies here. Judge Black, who wrote the opinion, said:

"The defendant neither affirms nor denies the power of the state itself to fix a maximum rate of charges, but does contend that no such power has been delegated to the city of St. Louis."

Judge Black again said:

"The power to regulate the charges for telephone service is neither included in nor incidental to the power to regulate the use of streets, and the ordinance cannot be upheld on any such ground. * * *."

Judge Black finally said:

"The power to regulate, it may be conceded, gives the city the right to make police regulations as to the mode in which the designated employment shall be exercised, (1 Dill. Nun. Corp. Sec. 358;) but, taking these charter provisions together, we think it would be going to an extreme length to say that they confer upon the city the power to fix telephone rates."

We can see no distinction between a telephone case and a taxicab case. Both use the streets and, in that use, are quite properly subject to regulation.

Respondents next cite State ex rel. Garner v. Missouri and Kansas Telephone Company, 189 Mo. 83, 88 S. W. 41. It was an opinion by

432

the Supreme Court en Banc, and the majority opinion was written by Judge Valliant. Kansas City had adopted an ordinance, fixing the maximum rates to be charged by telephone companies, for their services in that city. The charter of Kansas City provided that the city should have the power, by ordinance, to regulate prices to be charged for telephone services. Judge Valliant said:

"In so far as the ordinance depends upon the charter, there is no doubt of the authority; the charter expressly authorizes it. But whether the provision of the charter is backed by lawful authority is the serious question in the case."

Again, in speaking of the power of Kansas City to fix telephone rates, under the power to regulate the use of its streets by telephone companies, Judge Valliant said:

"Under the power the city may regulate the planting of poles, wires, etc., or require the wires to be put under ground, or do anything within reason to render the use of the street by the private corporation as little of injury to the public as may be. But the section does not confer on the city the power to regulate the prices to be charged by tthe telephone company for its service to the inhabitants of the city."

The case of Turner v. Kansas City, 354 Mo. 857, 191 S. W. (2d) 612-615, is next cited by respondent. That opinion was written by Commissioner Bohling, with the concurrence of the other Commissioners and all of the Judges of Division Two of the Missouri Supreme Court. That case involved the power of Kansas City to pass an ordinance making it unlawful to tell, or pretend to tell, fortunes for money. Plaintiff attempted to enjoin Kansas City from enforcing such ordinance. The Circuit Court of Kansas City had dismissed appellant's case and the Supreme Court of Missouri affirmed such action, distinguishing between what Judge Valliant said in Garner v. Telephone Company, *Supra,* from the case then at bar.

Judge Bohling said: "* * * establishing charges for telephone service is such a high governmental prerogative as to require an express and specific delegation to vest such power in a municipality."

Respondent last cites Tietjens v. St. Louis, 222 S. W. (2d) 70-72, 359 Mo. 439. That opinion was written by Judge Douglas, with the concurrence of all of the Judges of the Supreme Court en Banc. It was a rent control case, and the ordinance was declared to be invalid. There were no express declarations by the State or Nation that any city could fix rates of rental. Judge Douglas said:

"Since it is clear that the city of St. Louis has no power under its present charter, nor by delegation from the state, to enact an ordinance controlling rents, we must hold the ordinance invalid as to its regulation of rents, * * *."

Conceding that courts of other states have upheld the power of cities, in those states, to fix taxicab rates, without an express delegation

of such power to the cities of those states, we feel that we are bound by the decisions of the Supreme Court of this State, holding that, while cities have the power to regulate the use of their streets by telephone companies, telegraph companies, and even vehicles, the rates to be charged by such companies, even taxicab companies, merely because of their rights to use the streets, cannot properly be regulated by the cities.

It becomes our duty to affirm the judgment of the Circuit Court of Greene County. We cannot be charged with expressing any opinion as to the power of the Public Service Commission of Missouri to fix taxicab rates. That question is not in this case at all. Even if the Public Service Commission has such power, we are unable to see how the result in this case can be changed in any way, as the City of Springfield has no power to fix rates for taxicab service.

The opinion of the Circuit Court of Greene County must be affirmed, in any event. It is so ordered. *Vandeventer, P. J.,* and *McDowell, J.,* concur.

EPITOMIZATION OF THE VALID PROVISIONS OF ORDINANCE NO. 613 WITH RESPECT TO THE OPERATION OF TAXICABS.

Ordinance No. 613 was adopted May 24, 1949. It repealed a prior ordinance adopted December 17, 1946, "relating to the regulation of taxicabs", and enacted in lieu thereof a new ordinance "relating to the same subject matter" (tr. pp. 25, 26).

The old ordinance contained 25 sections. The new ordinance contains a like number.

The provisions of the old ordinance were all pertaining to licensing and operation of taxicabs. It did not attempt to fix prices to be charged for taxicab service.

The new ordinance does attempt to fix such prices in Section 547 (a) (b) (tr. p. 35) as follows:

*Section 547:* The following shall be the rates to be charged by taxicabs operating within the City:.

(a) For direct service fifty cents (50¢) for the first passenger, and thirty cents (30¢) for each additional passenger;

(b) For other service thirty cents (30¢) for each passenger."

The new ordinance prescribes a penalty of $10.00 to $500.00 for failing to comply with its provisions.

The regulatory provisions of the new ordinance were held valid by the trial court. The price fixing provisions of the new ordinance were held invalid.

Both ordinances were broad and comprehensive as respects the licensing and regulation of taxicabs. Epitomized, the regulations in the new ordinance are as follows:

*Section 536* prohibits engaging in taxicab business without a license and without obtaining a permit.

*Section 537* provides that the permit cannot be issued until the Council has passed a resolution of convenience and necessity.

*Section 538* provides that the application for the permit must be made to the City Clerk and requires information in detail regarding the applicant.

*Section 539* provides for a hearing thereon before the City Council and determination of public convenience and necessity.

*Section 540* prohibits the transfer of a permit except by approval of the Council.

*Section 541* provides that no permit shall be issued except to a bona fide owner or licensee of the vehicles proposed to be operated as taxicabs, and that muniments of title for every vehicle be deposited with a designated City Commissioner.

*Section 542* provides for the filing with the Commissioner of a policy or policies of insurance with adequate coverage for the protection of the public.

*Section 543* sets forth detailed requirements regarding the revocation of a taxicab permit by the Commissioner.

*Section 544* prohibits the issuance of a permit to a person whose permit has been revoked unless the Council, by resolution, so orders after application and hearing.

*Section 545* requires that every taxicab shall have certain equipment, including ''(d) a speedometer in good working order'' and a card giving the name of the operating company and a schedule of fares to be charged by the taxicab.

*Section 546* provides that all taxicabs shall be kept in suitable condition as to repair and cleanliness.

*Section 547*, supra, attempts to fix ''the rates to be charged by taxicabs operating within the city''.

*Section 548* provides for certain identification marks to be placed on the taxicab.

*Section 549* prohibits cruising within the business district in search of passengers and defines the business district.

*Section 550* provides that no taxicab shall permit more than seven persons, including the driver, to be carried in it at one time.

*Section 551* provides that the owner shall report violations of a driver of any of the operating company's rules and of any municipal, state or federal law.

*Section 552* requires the operating company to keep a record of all cars for which certificates are on file with the Commissioner, showing details as to hours of operation, name of driver, hours of work, etc.

*Section 553* provides that no owner shall operate a taxicab without having an office and a telephone number for receiving and dispatching calls.

*Section 554* provides that no owner or driver shall operate a taxicab along routes in a manner similar to that of mass transportation vehicles operating along definite routes.

*Section 555*   provides that no operator, while on duty, shall have in his possession intoxicating beverages, or knowingly carry or transport intoxicating beverages, or have in his possession at or near his office or place of business any intoxicating beverages, and prohibits the drinking of intoxicating beverages of any kind while on duty.

*Section 556*   makes it unlawful for any person to drive a taxicab without first obtaining a permit from the Commissioner, and sets out in detail the information to be contained in the application for the permit.

*Section 557*   fixes an age limit of twenty-one years or older for drivers and requires examination by City Physician as to vision, hearing, heart action, evidence of narcotic or alcoholic addiction. Requires also that the drivers shall be of sound physique, able to read and write, be clean and neat and be a registered chauffeur under the laws of Missouri.

*Section 558*   requires the Commissioner to investigate the facts set out in the driver's application before issuing a permit, and sets out in detail certain other requirements respecting the duties of the driver, renewal of the permit, fee to be charged for same, etc.

*Section 559*   requires the payment of a fee before the permit is issued.

*Section 560*   provides that any permit granted to a driver may be revoked on notice, and for a hearing.

*Section 561*   provides that no person shall use a taxicab for any unlawful or immoral purpose, and that the driver or owner shall not knowingly permit such unlawful or immoral use, and for revocation of license upon conviction of violating this provision.

*Section 561.1*   provides for the filing of a financial statement with the Commissioner by the person holding a taxicab permit.

*Section 561.2*   prohibits the sounding of a horn or signal device when taxicab is standing still or for the purpose of soliciting passengers.

*Section 561.3*   (*a*) (*b*) is the penalty section.

All of the above provisions are regulatory except the price fixing provision and are fully authorized by the City Charter.

The definition section of the new Ordinance (Section 535) has no particular bearing upon the issues of this case. It defines the words "Taxicab", "Person", "Owner", "Driver", "Commissioner", "City", and "Cruising", as used in the Ordinance.

Prepared and submitted by Counsel for Respondent.
December 5, 1950.